COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Felton and Kelsey
Argued at Richmond, Virginia


BOBBY MORRELL PATTERSON
                                        OPINION BY
v.    Record No. 2677-01-2      JUDGE ROBERT P. FRANK
                                        FEBRUARY 4, 2003
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ORANGE COUNTY
                        Daniel R. Bouton, Judge

            Charles L. Weber, Jr., for appellant.

            Leah A. Darron, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     Bobby Morrell Patterson (appellant) was convicted in a jury

trial of abduction with intent to defile, in violation of Code

§ 18.2-48; use of a firearm in that abduction, in violation of

Code § 18.2-53.1; robbery, in violation of Code § 18.2-58;

attempted forcible sodomy, in violation of Code §§ 18.2-67.1 and

18.2-67.5; and malicious wounding, in violation of Code

§ 18.2-51.  On appeal, he contends the trial court erred in

refusing to strike a juror for cause.  For the reasons stated,

we reverse his convictions and remand the case.

                         I.  BACKGROUND

     After several veniremen were struck for cause, John Ryder

was called as a potential juror.  During voir dire of the entire

panel, the following exchange occurred:

THE COURT:  Have any of the three of you acquired any information about this alleged offense or about the accused from the news media or any other source?

MR. RYDER:  Yes.

THE COURT:  All right, sir.  Without telling me the specific details of anything that you might have heard or learned, just tell me the general source of the information.  Was it something you heard from someone or --

MR. RYDER:  I'm a police officer.

THE COURT:  All right.  So you heard some talk?  Is that the gist of it?

MR. RYDER:  I'm not going to tell you what I heard.  I was a police officer in this county for forty-three years and I still talk to the other police officers about different things, about inmates and things.

THE COURT:  All right.  Having acquired that information or having had those conversations, would the information that you have obtained affect your ability to be impartial in the case?

MR. RYDER:  I can't honestly say.

THE COURT:  Well, would you -- considering what you might have heard, do you believe that you could sit as a member of this jury and keep an open mind and wait until the entire case is presented before you rendered any type of verdict?

MR. RYDER:  I don't know, sir.

Charles L. Weber, Jr., appellant's counsel, conducted the following voir dire of Mr. Ryder:

MR. WEBER:  Mr. Ryder, I would ask you, your years of service with the police department, would that influence your capacity to judge all the testimony fairly and evenly or would you tend to believe or credit a law

- 2 -

enforcement officer more than say anyone else?

MR. RYDER:  No.

MR. WEBER:  You think you could listen —-

MR. RYDER:  I could listen to the evidence (unintelligible).

MR. WEBER:  But you have spoken to specific law enforcement officers about this case?

MR. RYDER:  Yes, sir.

 *     *     *     *     *     *     *

MR. WEBER:  [Y]ou had indicated, quite frankly, that you had spoken about this case with other law enforcement officers that are involved in the case?

MR. RYDER:  I don't know if they're involved or not, sir.

MR. WEBER:  But did they talk to you about specific evidence that they may or may not have uncovered during the course of the investigation?

MR. RYDER:  We did talk about it.  It wasn't —- it wasn't like, you know, this person did this and this happened or that happened and that happened.  It was general conversation. What happened there on the road or somebody in a wheelchair abducted this person.  I didn't know either one of them.

MR. WEBER:  Did they talk to you about evidence that they had collected?

MR. RYDER:  No, sir, I don't believe so.

MR. WEBER:  Is there anything about the conversations you had with the police officers involved in this case or not involved in the case, but the police officers associated, I assume, with the

Orange County Sheriff's Department[1] that would lead you to question your impartiality, your ability to judge it only on the evidence that's presented in court?

MR. RYDER: No, sir. I would judge it only on the evidence I was given. I don't know this guy or the lady involved or anybody, just what you hear.

The prosecutor, Timothy E. K. Sanner, then asked:

MR. SANNER: So, Mr. Ryder, if I understand it correctly, you feel that while you may have heard something about the case, that I gather you understand that whatever you heard was not evidence.

MR. RYDER: Right.

MR. SANNER: And may or may not be accurate. Is that true?

MR. RYDER: Right.

MR. SANNER: So do you feel that in the course of your deliberations here today that you can set aside completely what you've heard before and base your decision here today solely upon the law and the evidence that may be presented?

MR. RYDER: Oh, yes. Sure.

Ryder also indicated he had no interest in the trial or its outcome, that he had not formed any opinion as to the guilt of the accused, that he was not aware of any bias or prejudice, that he understood the accused was presumed innocent, and that he understood the Commonwealth must prove guilt beyond a reasonable doubt.

---

[1] The crimes occurred in Orange County, and the Orange County Sheriff's Department was involved in the investigation of the crimes.

Appellant moved to strike Ryder because of concern that he might not be impartial, based on his conversations with officers of the Orange County Sheriff's Department. In denying appellant's motion, the trial court explained:

> THE COURT: All right. Well, I listened very carefully to his examination at both junctures. He expressed perhaps some vague reservations when he was first questioned about the subject. Then, of course, he was called in for individual <u>voir</u> <u>dire</u>. At that point he made it clear and it became apparent that the only information he was privy to consisted of some general conversations. He indicated, I believe on his own or perhaps in response to a question, that he didn't know the defendant or either one of them and didn't have any specific discussions about evidence, simply a cursory or general conversation and beyond that, the court observed his demeanor, watched him very carefully, listened to the questions that were asked and the answers that were given but also watched very closely the manner in which he answered the questions and the demeanor that he exhibited in giving his answers and the court finds that on individual <u>voir</u> <u>dire</u>, why any possible reservations that he might have had certainly at that point were eliminated. The court finds that Mr. Ryder gave us information that was forthright and straightforward and he indicated that he would be able to judge the case solely based on the law and the evidence and I think the word he used to describe that process when he was asked if that was what he was supposed to do, I think he said exactly. But in any event, the motion to strike him for cause will be denied. Your exception is noted for the record.

II.  ANALYSIS

Appellant posits three reasons why the trial court erred in denying his motion to strike Ryder for cause:  (1) Ryder initially acknowledged his impartiality was questionable; (2) Ryder's long association with the Orange County Sheriff's Department made it unlikely that the public would have confidence in the integrity of the criminal process; and (3) Ryder's pre-trial discussion with members of the Orange County Sheriff's office would undermine public confidence in the integrity of the criminal process.

> Initially, we observe that the right of an accused to trial by an impartial jury is a constitutional right.  U.S. Const. Amends. VI and XIV; Va. Const. Art. 1, Sec. 8. Additionally, Code § 8.01-358 and Rule 3A:14 provide that members of the venire must "stand indifferent in the cause."
>
> We have stated that a prospective juror "must be able to give [the accused] a fair and impartial trial.  Upon this point nothing should be left to inference or doubt.  All the tests applied by the courts, all the enquiries [sic] made into the state of the juror's mind, are merely to ascertain whether [the juror] comes to the trial free from partiality and prejudice.
>   "If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion.  For, as has been well said, it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible."
>
> Wright v. Commonwealth, 73 Va. (32 Gratt.) 941, 943 (1879); accord Barker v. Commonwealth, 230 Va. 370, 374-75, 337

- 6 -

> S.E.2d 729, 732-33 (1985); Justus v.
> Commonwealth, 220 Va. 971, 976, 266 S.E.2d
> 87, 90-91 (1980); Breeden v. Commonwealth,
> 217 Va. 297, 298, 227 S.E.2d 734, 735
> (1976).

Green v. Commonwealth, 262 Va. 105, 115, 546 S.E.2d 446, 451 (2001).

Upon appellate review, this Court defers to a trial court's decision to retain a prospective juror, and we will not reverse that decision absent a showing of manifest error. Stewart v. Commonwealth, 245 Va. 222, 234, 427 S.E.2d 394, 402 (1993). A trial judge observes the voir dire. Therefore, the trial court has a superior position from which to evaluate potential jurors' responses and to determine whether anything will prevent or substantially impair their performance as required by the court's instructions and the jurors' oath. Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990). We review a juror's responses during the entire voir dire to determine impartiality. Vinson v. Commonwealth, 258 Va. 459, 467-68, 522 S.E.2d 170, 176 (1999).

Appellant first contends Ryder should have been struck for cause because he initially expressed doubts that he could be impartial. During the voir dire by the trial court, Ryder could not "honestly say" whether the information he acquired from the Sheriff's Department would affect his impartiality. He did not know whether, based on what he had heard, he could "keep an open mind" and wait until all of the evidence was presented before deciding the case.

Ryder indicated, in response to leading questions from the Commonwealth, that he could base his decision "solely upon the law and the evidence that may be presented." Although a court should give little weight to affirmative responses to leading questions, see Williams v. Commonwealth, 14 Va. App. 208, 214-15, 415 S.E.2d 856, 860 (1992), the trial court found Ryder "would be able to judge the case solely based on the law and the evidence." Even if we assume this finding was not manifest error, we must continue our inquiry and review appellant's other challenges.

Appellant also contends Ryder's discussion of appellant's case with the Orange County Sheriff's Department disqualified him from service as a juror. Ryder, in response to appellant's counsel's voir dire, indicated he could set aside what was told to him by members of the Sheriff's Department and evaluate the case solely on the evidence presented at trial. Indeed, the trial court so found.

> The constitutional guarantee of an impartial jury does not contemplate excluding those who have read or heard news accounts concerning the case or even exclusion of those who may have formed an opinion based on such accounts. Calhoun v. Commonwealth, 226 Va. 256, 258, 307 S.E.2d 896, 897 (1983). Because of today's rapid and widespread dissemination of news by the media, it often will be difficult to find qualified jurors who have not read or heard of a case of public interest and have not formed some impression regarding its merits. Id. The test, instead, is whether a juror is capable of laying aside a preconceived opinion and rendering "a verdict solely on the evidence." Id. at 258, 307 S.E.2d at 898; see also Foley v. Commonwealth, 8 Va. App. 149, 154, 379 S.E.2d 915, 918 (1989).

- 8 -

<u>Wilmoth v. Commonwealth</u>, 10 Va. App. 169, 173, 390 S.E.2d 514, 516 (1990).

Here, however, the source of the information was not the news media, but members of the Orange County Sheriff's Department, an organization with which Ryder had a forty-three year association. Additionally, members of this department were likely to testify at trial. Appellant contends the trial court erred in allowing Ryder, who had a "general conversation" with members of that department and who initially expressed doubt as to his impartiality, to remain on the venire panel, as his presence would erode public confidence in the criminal justice system.

The Commonwealth argues "public confidence" was not raised at the trial level and, therefore, appellant is barred from raising this issue for the first time on appeal. See <u>Buck v. Commonwealth</u>, 247 Va. 449, 452-53, 443 S.E.2d 414, 417 (1994). While we agree with the Commonwealth that appellant did not specifically use the words "public confidence" at trial, he did ask the court to strike the juror for cause, based on his relationship with the Orange County Sheriff's Department and the information he received from them. We find, therefore, the issue of public confidence is not procedurally barred under Rule 5A:18.

The Supreme Court cases on this issue do not indicate that prior appellants specifically raised "public confidence" at the trial level, but instead suggest the trial judge must

specifically consider the effect that placing the venireman on the jury will have on the public's confidence in the judicial system.  See Barrett v. Commonwealth, 262 Va. 823, 826-27, 553 S.E.2d 731, 732-33 (2001) (listing appellant's arguments, which did not specifically include "public confidence," but concluding the trial court erred for failing to strike the potential juror on public confidence grounds); Medici v. Commonwealth, 260 Va. 223, 226-27, 532 S.E.2d 28, 30-31 (2000) (listing appellant's arguments, which did not specifically include "public confidence," but concluding the trial court erred for failing to strike the potential juror on public confidence grounds); City of Virginia Beach v. Giant Square Shopping Ctr. Co., 255 Va. 467, 470-71, 498 S.E.2d 917, 918-19 (1998) (listing appellant's arguments, which did not specifically include "public confidence," but concluding the trial court erred for failing to strike the potential juror on public confidence grounds).  Here, appellant made the underlying factual arguments that the trial court needed to consider when making a ruling based on public confidence.  Therefore, we will not find the issue precluded from appellate review.

In a series of opinions decided over the last several years, the Supreme Court of Virginia has clearly found that inherent in appellate review of impartiality is a determination of whether "the public would have confidence in the integrity of the process" if the prospective juror remained.  In Giant Square

- 10 -

Shopping Ctr. Co., for example, the Court found a trial court erred in refusing to strike for cause a prospective condemnation commissioner who was a current and past client of one party's attorney, even though the prospective commissioner indicated he could be impartial about the subject case. The Court held:

> Under these circumstances, it is extremely unlikely the public would have confidence in the integrity of the process when a commissioner has the identity of interests demonstrated by this prospective commissioner. This is true even though, as the record shows, the commissioner is a "respected member of the community" and "known to be a man of integrity," who may be determined to discharge his duties in a forthright and unbiased manner.

Id. at 471, 498 S.E.2d at 919.

The Supreme Court also addressed "public confidence" in Cantrell v. Crews, 259 Va. 47, 523 S.E.2d 502 (2000). The Court found the trial court abused its discretion, holding:

> Public confidence in the integrity of the process is at stake. It cannot be promoted when a sitting juror is, at the time of trial, a client of the law firm representing one of the parties to the litigation as a result of a similar occurrence.
>
> This is true even though, as the record shows, the juror states that the circumstances of her representation would have no "bearing" on her judgment as a juror and that she could "be totally fair to both sides." We have no doubt that [the juror] was sincere in her beliefs and that she was determined to discharge her duties in a forthright and unbiased manner.

Id. at 51, 523 S.E.2d at 504.

In Medici, a potential juror's husband had been murdered. The person accused of his murder was represented by the Public

- 11 -

Defender's Office, the same office representing Medici.  260 Va. at 226, 532 S.E.2d at 30.  The juror stated unequivocally that she could "judge the evidence fairly and impartially."  Id. While recognizing an appellate court must give deference to a trial court's ruling, the Supreme Court found the trial court erred in not striking the juror for cause, holding, "While we have no reason to question Bennett's honesty and sincerity, we think that permitting her to sit as a juror, in the circumstances of this case, would weaken public confidence in the integrity of criminal trials."  Id. at 227, 532 S.E.2d at 31.

Barrett also involved striking a juror for cause, when a prospective juror's brother, a police officer, would testify during the trial regarding background issues.  In finding the trial court erred, the Supreme Court held:

> Our consideration of prospective juror Wade's answers gives us no reason to question the honesty and sincerity of his determination to discharge his duties as a juror in an unbiased manner.  And we have said in the context of a criminal case that a juror's family relationship to a police-officer witness does not require dismissal per se of the juror if the trial court is satisfied that the juror can stand indifferent in the cause.  Lilly v. Commonwealth, 255 Va. 558, 569-70, 499 S.E.2d 522, 531 (1998), rev'd on other grounds, 527 U.S. 116 (1999).  However, in the subsequent Medici and Cantrell cases, we recognized that in constituting the jury panel, "[p]ublic confidence in the integrity of the process" is also "at stake."  Medici, 260 Va. at 227, 532 S.E.2d at 30; Cantrell, 259 Va. at 51, 523 S.E.2d at 504.
>
> Thus, public confidence in the integrity of the process is one of the elements a trial court should consider when deciding whether

- 12 -

> a juror should be struck for cause. In the
> recited circumstances of this case we think
> that a refusal to strike the prospective
> juror for cause makes it unlikely that the
> public would have confidence in the judicial
> process. See Medici, 260 Va. at 227, 532
> S.E.2d at 30-31; Cantrell, 259 Va. at 51,
> 523 S.E.2d at 504.

262 Va. at 826-27, 553 S.E.2d at 733.

We conclude from Medici and its progeny that an analysis of "public confidence" is inherent in any appellate review of a juror's impartiality and does not depend solely upon a juror's explicit acknowledgement of bias. In the cases cited above, the Supreme Court did not question the juror's belief that he or she could be impartial.

While we must evaluate impartiality based on the entire voir dire, giving due deference to the trial court's findings, we must consider, in a broader sense, whether public confidence in the judicial process is undermined. Based on the circumstances of the instant case, we find that the trial court abused its discretion in not striking Ryder for cause. Because of his long association with the Sheriff's Department, his conversation with members of that department concerning this specific case, and his initial concern about his impartiality, it is "unlikely that the public would have confidence in the judicial process" used in this case. Id. at 827, 553 S.E.2d at 733.

We, therefore, reverse appellant's convictions and remand these matters for a new trial, if the Commonwealth be so advised.

Reversed and remanded.

- 13 -