COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Agee[*]
Argued at Alexandria, Virginia


JORGE ISAAC SAMUDIO PEREZ, S/K/A
 JORGE SAMUDIO-PEREZ
                                          OPINION BY
v.    Record No. 0180-02-4      JUDGE ROSEMARIE ANNUNZIATA
                                          MAY 20, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Leslie M. Alden, Judge

         Christopher C. Finch (Pelton, Balland, Young,
         Demesky, Baskin & O'Malie, P.C., on brief),
         for appellant.

         Richard B. Smith, Senior Assistant Attorney
         General (Jerry W. Kilgore, Attorney General,
         on brief), for appellee.


     A jury convicted Samudio-Perez of rape and sentenced him to

serve six years in the penitentiary.[1]  On appeal, he contends the

trial judge erred in denying his midtrial motion for a mistrial

arising from a juror's prior relationship with one of the

detectives assigned to the case.  For the following reasons, we

affirm.

---

[*] Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

[1] The jury acquitted Samudio-Perez on a charge of animate
object penetration.

Background

On appeal, we view the facts in the light most favorable to the Commonwealth, the party prevailing below, together with all reasonable inferences fairly deducible therefrom. See Ortega v. Commonwealth, 31 Va. App. 779, 786, 525 S.E.2d 623, 627 (2000). Viewed accordingly, the evidence shows that Walter Sorto was called as a prospective juror for Samudio-Perez's trial in October 2001. The prosecutor asked the prospective jurors if any of them or a family member had been the victim of a sexual assault. Sorto told the court his nephew had assaulted his daughter four years earlier. After the prosecution informed Sorto the case did not involve sexual assault within a family, Sorto indicated he could be fair to both sides. Defense counsel did not ask Sorto any questions and did not move to strike him for cause. The court impaneled the jury, including Sorto, and counsel gave opening statements. After a short recess, the judge discovered that a detective in the case, David E. Moore, had investigated the case involving Sorto's daughter.[2] Sorto had not recognized Detective Moore during opening statements. The judge brought Sorto into the courtroom and counsel questioned him about his relationship with Detective Moore:

> THE COURT: Mr. Sorto, over break, it came to my attention that Detective Moore, who is involved with this case, may have been involved with your daughter's case.

> MR. SORTO: That's right.

---

[2] The detective recognized Sorto and wrote a note to the assistant Commonwealth's attorney, who brought the matter to the judge's attention.

THE COURT:    Has that come to your
              recollection?

MR. SORTO:    I was actually – I didn't see
              him sitting right there.  But
              later on, when we were talking, I
              saw him right there.

THE COURT:    Now that you've come to that
              realization that he is the same
              one, how does that affect your
              feeling about the case?

MR. SORTO:    It doesn't really affect me at
              all.  I've been through this.  He
              was professional.

THE COURT:    Did you talk to Detective Moore
              in the course of the
              investigation of your daughter's
              case?

MR. SORTO:    Yes, I did.

MS. SWART:    Mr. Sorto, in your dealings with
              Detective Moore – we're not
              asking if you liked him or
              disliked him as a person or
              anything like that.  In this
              case, as I told you in opening
              statements, he's going to be
              testifying as to the entire
              interview with this defendant.
              Are you going to be able to set
              aside your personal experience
              with Detective Moore with your
              daughter's case and listen to the
              whole statement and assess his
              credibility, what he says, on
              what he says here today?

MR. SORTO:    Basically, whatever comes here
              right now - comes up right now
              is basically what I have to

              decide.  I'm not going to through
              [sic] anybody's judgment.

MS. SWART:    That's all the questions I have.

THE COURT: All right, Mr. Finch. Do you have any questions?

MR. FINCH: One or two. Sir, you had a phone sting that was done in your house with Detective Moore?

MR. SORTO: That's right.

MR. FINCH: He conducted it?

MR. SORTO: That's right.

MR. FINCH: So you got to know each other a little bit. If it was his word against somebody else's, wouldn't you favor Mr. Moore's word?

MR. SORTO: Not at all. It comes to my mind that if I'm here, as she mentioned right now, just basically whatever is proved or any other type problems that comes up [sic], that's basically it. See, I don't see Mr. Moore as somebody who's going to interrupt [sic] this kind of situation. I mean, he's been through my case and I know him basically for that particular occasion, but that's it.

MR. FINCH: But you were favorably impressed with him?

MR. SORTO: Well, I can't say that right now. I can't say he was favorable or not. But I haven't heard anything yet to say, you know, of anything [sic]. I don't know.

MS. SWART: Did you have a favorable impression of Detective Moore from that incident [his daughter's investigation]? Not now, but back then?

MR. SORTO: From that particular incident, I did. He was a very professional

- 4 -

man for that particular case. We should believe he did a great job personally on that case [sic]. I don't know about this. So I can't say anything right now.

MS. SWART: Today, when he raises his right hand and swears to tell the truth, in your mind are you going to sit there and say, whatever he says is going to be the truth or are you going to sit and listen to his while testimony and try to figure it out then?

MR. SORTO: Well, I'd rather say listen to the testimony than rather say something else.

THE COURT: All right. Thank you, sir. You may go back to the jury room.

Defense counsel moved for a mistrial based on Sorto's prior relationship with Detective Moore.[3] The judge denied the motion, stating "I just can't conclude that he's got any kind of a bias or pre-disposition one way or another."

During the investigation, Detective Moore was not the lead investigator on the case, however, he interviewed Samudio-Perez because he speaks Spanish, Samudio-Perez's native language. Detective Moore did not record Samudio-Perez's statements and relied only on his notes from the interview for his testimony.

---

[3] Samudio-Perez also asserted Sorto could have been stricken for cause had the relationship come to light during voir dire.

Detective Moore testified that Samudio-Perez made an incriminating statement to him, specifically noting Samudio-Perez's admission that the sexual encounter between Samudio-Perez and the victim occurred without her consent.  On direct examination, Samudio-Perez denied making the incriminating statement to Detective Moore and stated Moore suggested he write a letter to the victim.  Samudio-Perez wrote the letter, which also incriminated him.

## Analysis

### I.  Standard of Review

Samudio-Perez's appeal comes to us on a denial of a motion for a mistrial.  Upon familiar principles, we will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court's ruling was prejudicial.  See Taylor v. Commonwealth, 25 Va. App. 12, 17, 486 S.E.2d 108, 110 (1997) (citation omitted).[4]  We turn now to the substantive issues presented.

---

[4] Samudio-Perez argues the case at bar is governed by the same standards we set forth in Green v. Commonwealth, 26 Va. App. 394, 494 S.E.2d 888 (1998).  We find his reliance on Green is misplaced.  In Green, the defendant moved for a mistrial based on a juror's failure to truthfully answer a question during voir dire.  Id. at 399, 494 S.E.2d at 890.  The court recited the standard of review as follows:

> [T]o be entitled to a mistrial for jury misconduct arising from voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a
>
> correct response would have provided a valid basis for a challenge for cause."

Id. at 401, 494 S.E.2d at 891 (emphasis added) (quoting Taylor v. Commonwealth, 25 Va. App. 12, 18, 486 S.E.2d 108, 111 (1997)

## II. Denial of Motion for Mistrial

Under the standard of review set forth above, the party moving for mistrial, in this case, Samudio-Perez, has the burden of establishing a manifest probability of prejudice. See Taylor, 25 Va. App. at 17, 486 S.E.2d at 110. To determine if a trial court's denial of a motion for a mistrial was prejudicial, when a juror's conduct is at issue, we must look to the juror's possible bias. The existence of an individual juror's possible bias or partiality is a question of fact to be determined by the trial court. See Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), cert. denied, 475 U.S. 1099 (1986). Additionally, "[i]t is well settled that the credibility of witnesses [and] the weight accorded witnesses' testimony . . . are matters that are within the province of the fact finder." Brown v. Commonwealth, 25 Va. App. 171, 191, 487 S.E.2d 257, 258 (1997) (citing Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986)).

---

(additional citations omitted). Samudio-Perez does not allege juror misconduct resulting from voir dire; thus, the Green standard is inapplicable. Moreover, even if we were to accept the general principles from Green regarding challenges for cause, the outcome would remain the same. In evaluating both the denial of a mistrial and a refusal to strike a juror for cause, our ultimate inquiry is whether the trial court's decision prejudiced the defendant. Thus, the result reached in the case at bar would remain the same under both standards.

The trial court was in the best position to consider Sorto's response to counsel's questions and resolved the issue of possible bias in favor of Sorto and the Commonwealth. Sorto repeatedly informed the court he was able to address the issues impartially and stated he would not favor Detective Moore's testimony over another witness' testimony. Furthermore, Sorto stated he could not determine if Detective Moore had conducted himself professionally in the case at bar until he considered the evidence. After further questioning of Sorto by counsel, the trial judge made a finding of fact that Sorto could be a fair and impartial juror, stating she could not conclude "[Sorto]'s got any kind of a bias or pre-disposition one way or another." Viewing this evidence in the light most favorable to the Commonwealth, we find there was no "manifest probability" that the denial of a mistrial was prejudicial to Samudio-Perez. See Lilly v. Commonwealth, 255 Va. 558, 499 S.E.2d 522 (1998), rev'd on other grounds, 527 U.S. 116 (1999).

Samudio-Perez further argues that, if we find Sorto could have been stricken for cause, then the denial of the motion for a mistrial should be reversed. In determining a juror's possible bias, we may consider whether the juror could have been stricken for cause. See Taylor, 25 Va. App. at 18, 486 S.E.2d at 111. When there are no grounds to strike a juror for cause, the juror's presence on the jury will not affect the essential fairness of a trial and, therefore, we cannot find that prejudice exists. See id.

In the case at bar, as we have noted, the trial court found as fact that Sorto was a fair and unbiased juror. Thus, no

ground for a strike for cause was established.  Moreover, Sorto's relationship with Moore does not establish a <u>per</u> <u>se</u> disqualification of Sorto as a juror under Virginia law.  <u>See</u> <u>Clozza v. Commonwealth</u>, 228 Va. 124, 135, 321 S.E.2d 273, 279 (1984) (holding a prospective juror is not subject to "automatic exclusion because of an association with law enforcement").  We have long held that a juror's relationship to a witness does not require his dismissal <u>per</u> <u>se</u>.  <u>See</u> <u>Lilly</u>, 255 Va. at 569-70, 499 S.E.2d at 531.  In <u>Lilly</u>, the Supreme Court evaluated the propriety of seating a juror who had a prior relationship with a police officer witness and stated:  "A juror's relationship to such a police officer witness does not require <u>per</u> <u>se</u> dismissal of that juror from the venire, and the juror may be retained if the trial court is satisfied that the juror can set aside considerations of the relationship and evaluate all the evidence fairly."  <u>Id.</u> at 570, 499 S.E.2d at 531.  Given these principles and the trial court's conclusion that Sorto could set aside his prior relationship with Detective Moore and evaluate the evidence fairly and impartially, we find that Samudio-Perez's grounds for reversal of the trial court's denial of his mistrial motion are without merit.

Samudio-Perez finally argues that permitting Sorto to remain on the jury would erode public confidence in the integrity of criminal trials.  To support his argument, Samudio-Perez relies on several recent cases, decided by the Virginia Supreme Court, in which the court determined that "'[p]ublic confidence in the integrity of the process is also at stake,'" when a juror's selection is questioned, and is a factor to consider in

determining whether a potential juror should be seated.[5]
Cantrell v. Crews, 259 Va. 47, 51, 523 S.E.2d 502, 504 (2000);
see also Barrett v. Commonwealth, 262 Va. 823, 553 S.E.2d 731
(2001); Medici v. Commonwealth, 260 Va. 223, 532 S.E.2d 28
(2000).

In Cantrell, a juror was a client of a law firm representing
one of the parties at trial.  Although the trial court determined
that the juror could be fair to both sides, the Supreme Court
reversed the trial court's decision, stating, "[Public confidence
in the integrity of the process] cannot be promoted when a
sitting juror is, at the time of trial, a client

---

[5] The Commonwealth argues Samudio-Perez's reliance on Medici v. Commonwealth, 260 Va. 223, 532 S.E.2d 28 (2000), is barred procedurally because he failed to raise the issue at trial.  See Rule 5A:18.  This Court recently held, in Patterson v. Commonwealth, 39 Va. App. 658, 576 S.E.2d 222 (2003), that an analysis of "public confidence" is inherent in any appellate review of a juror's impartiality.  We assume without deciding that Patterson applies here and consider the issue on the merits.

of the law firm representing one of the parties to the litigation . . . ." Cantrell, 259 Va. at 51, 523 S.E.2d at 504.

The Supreme Court addressed the issue again in Medici, a case in which a potential juror's husband had been murdered and the person accused of his murder was represented by the same public defender's office as Medici, the defendant. The juror stated she could judge the evidence fairly and impartially and she was impaneled. The Supreme Court reversed and held the trial court erred in not striking the juror for cause, concluding that "permitting her to sit as a juror, in the circumstances of this case . . . weaken[ed] public confidence in the integrity of criminal trials." Medici, 260 Va. at 227, 532 S.E.2d at 31.

Finally, the Supreme Court underscored the importance of safeguarding public confidence in jury selection in Barrett, where a prospective juror's brother was a police officer who would testify for the Commonwealth during the trial. The trial court found the juror could be fair and impartial and denied Barrett's motion to strike the juror for cause. The Supreme Court reversed the trial court's decision, stating:

> Our consideration of prospective juror Wade's answers gives us no reason to question the honesty and sincerity of his determination to discharge his duties as juror in an unbiased manner. . . . However in [Medici and Cantrell] . . . we recognized that in constituting the jury panel, "[p]ublic confidence in the integrity of the process" is also "at stake." . . . In the recited circumstances of this case we think that a refusal to strike the prospective juror for cause makes it unlikely that the public would have confidence in the judicial process.

<u>Barrett</u>, 262 Va. at 826-27, 553 S.E.2d at 733 (citations omitted).

Citing these principles, Samudio-Perez contends the relationship between Sorto and Detective Moore "creates the perception that the integrity of the [judicial] process is at stake" and that permitting Sorto to remain on the jury would "weaken the public confidence in the integrity of criminal trials."  We disagree.

All the challenged jurors in <u>Cantrell</u>, <u>Medici</u>, and <u>Barrett</u> had in common a contemporaneous and continuing relationship with legal counsel or a witness in the case.  By contrast, Sorto had a single contact with Moore four years earlier, but had no contemporaneous or continuing relationship with him.  Thus, Sorto's prior "relationship" with Detective Moore bears no affinity to the types of juror relationships found prejudicial in <u>Cantrell</u> and its progeny.  We, therefore, find no error in the trial court's refusal of Samudio-Perez's motion for a mistrial, and we affirm.

<u>Affirmed.</u>

Agee, J. concurring.

I agree with the majority opinion, but write separately because I would also hold Rule 5A:18 bars the issue first raised on appeal that seating juror Sorto would erode public confidence in the integrity of criminal trials.

"No ruling of the trial court . . . will be considered as a basis for reversal <u>unless the objection was stated together with the grounds therefor</u> at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18 (emphasis added).  "The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals."  <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 307, 494 S.E.2d 484, 488 (1998). When such specific objections have not been made, this Court will not consider an argument on appeal which was not presented to the trial court.  <u>Id.</u> at 308, 494 S.E.2d at 488 (citing <u>Jacques v. Commonwealth</u>, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991)). This rule also applies to constitutional claims.  <u>Id.</u> (citing <u>Deal v. Commonwealth</u>, 15  Va. App. 157, 161, 421 S.E.2d 897, 900 (1992)).

At no time did Samudio-Perez raise for the trial court's consideration the argument he makes on appeal that "the relationship between Detective Moore and Juror Sorto is of the sort that creates the perception that the integrity of the process is at stake."  He cites <u>Medici v. Commonwealth</u>, 260 Va. 223, 532 S.E.2d 28 (2000), as the foundation for his new appellate claim although he failed to present that case (or any

other) to the trial court.[6]

Samudio-Perez's failure to raise this argument at trial forecloses his ability to raise the claim for the first time on appeal. Further, Samudio-Perez has cited no "good cause" for his failure to raise the issue or proffered any reason as to why the ends of justice exception should apply. Therefore, the application of Rule 5A:18 should dispose of Samudio-Perez's appeal on this issue.

The Supreme Court of Virginia has rendered several recent decisions where new trials were ordered because a juror was inappropriately seated. See Barrett v. Commonwealth, 262 Va. 823, 553 S.E.2d 731 (2001); Medici, 260 Va. 223, 532 S.E.2d 28; Cantrell v. Crews, 259 Va. 47, 523 S.E.2d 502 (2000). The Supreme Court found in these cases the trial court had abused its discretion in the seating of the juror in question because seating that juror would cause "public confidence in the integrity of the process" to be diminished. However, none of these cases address whether the appellant raised the issue of "public confidence and the integrity of the process" at trial or whether the opposing party argued the application of Rule 5:25.[7]

I do not read our recent decision in Patterson v. Commonwealth, 39 Va. App. 658, 576 S.E.2d 222 (2003), to void the

---

[6] Medici was released June 9, 2000. Samudio-Perez's trial was sixteen months later, October 24, 2001.

[7] For present purposes, I assume Rules 5:25 and 5A:18 are interchangeable and what is said in application to one applies to the other.

application of Rule 5A:18 when a "_Medici_" claim is made.[8]  In _Patterson_, a panel of this Court found a _Medici_ claim was not procedurally barred by Rule 5A:18.  The _ratio decidendi_ of the panel opinion was not that _Cantrell_ and its progeny established, as a matter of law, the inapplicability of Rule 5A:18 when a "public confidence" claim is raised for the first time on appeal.  Instead, based on the facts in the record of that case, the _Patterson_ panel held that although the "appellant did not specifically use the words 'public confidence' at trial, he did ask the court to strike the juror for cause, based on his relationship with the Orange County Sheriff's Department and the information he received from them."  39 Va. App. at 666, 576 S.E.2d at 226.

This finding in _Patterson_ represents a determination that the appellant in that case sufficiently raised the issue in the trial court so as to vitiate the application of Rule 5A:18.  It was not a holding that a _Medici_ claim cannot be procedurally barred as a matter of law.

The Supreme Court of Virginia has consistently affirmed in evaluating error in the seating of a juror, that "As an appellate court, we must defer to a trial court's ruling on the issue of whether to retain or excuse a prospective juror for cause and that ruling will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion."  _Barrett_, 262 Va. at 826, 553 S.E.2d at 732  (citing _Medici_, 260 Va. at

_____

[8] By _Medici_ claim, I mean the assertion that the seating of a juror was error because the juror's presence would cause public confidence in the integrity of the judicial system to be diminished.

227, 532 S.E.2d at 30); see also Cantrell, 259 Va. at 50, 523 S.E.2d at 504; Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999). While "public confidence in the integrity of the process is one of the elements a trial court should consider when deciding whether a juror should be struck for cause," Barrett, 262 Va. at 826-27, 553 S.E.2d at 733, nothing in that maxim contradicts or overrides the obligation of a party to raise that issue in the trial court and not for the first time on appeal.

To the contrary, the Supreme Court has repeatedly reiterated the primacy of Rule 5:25. For example, in Buck v. Commonwealth, 247 Va. 449, 443 S.E.2d 414 (1994), a case involving Batson objections to the exclusion of certain persons on the basis of race from the venire, Buck's "failure to raise these arguments before the trial court precludes him from raising them for the first time on appeal." Id. at 452-53, 443 S.E.2d at 416 (citing Rule 5:25). Similarly, the failure to request that the trial court give an instruction to the jury on the abolition of parole pursuant to Fishback v. Commonwealth, 260 Va. 104, 532 S.E.2d 629 (2000), cannot be raised for the first time on appeal. Commonwealth v. Jerman, 263 Va. 88, 556 S.E.2d 754 (2002). The Court specifically noted "the consistent application of Rule 5:25 advances the rule's purpose of avoiding unnecessary reversals and trials." Id. at 93, 556 S.E.2d at 757.

While "public confidence in the integrity of the process" is an important consideration, it is of no higher rank than the assertion of racial prejudice in the selection of jurors under

<u>Batson</u> or in the fair instruction of the jury for sentencing through their knowledge of the abolition of parole under <u>Jerman</u>. We open a Pandora's box of subjective hindsight if appellate review of juror selection is based on first-time, post-trial conjecture as to what does or does not constitute appropriate "integrity of the process" to a majority of the appellate court hearing the argument years after the fact.

Accordingly, I would also affirm the ruling of the trial court, denying Samudio-Perez's motion for a mistrial, because his <u>Medici</u> argument on appeal is barred from consideration under Rule 5A:18.