COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Annunziata and Clements
Argued at Alexandria, Virginia


KENNETH CARL BROOKS

                                            OPINION BY
v.    Record No. 1401-02-4        JUDGE ROSEMARIE ANNUNZIATA
                                          SEPTEMBER 9, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                     John R. Prosser, Judge

          William A. Crane, Public Defender (Office of
          the Public Defender, on brief), for
          appellant.

          Richard B. Smith, Senior Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Kenneth Carl Brooks was convicted in a jury trial on three

counts of taking indecent liberties in violation of Code

§ 18.2-370, two animate object penetration charges in violation

of § 18.2-67.2, and five aggravated sexual battery charges in

violation of § 18.2-67.3. Imposing the sentence fixed by the

jury, the trial court sentenced Brooks to 99 years in prison, 10

of which were suspended, and ordered him to pay a $25,000 fine.

     Brooks appeals his convictions on the ground that the trial

court erred because it denied his motion to excuse for cause a

juror who was related to several of the prosecution witnesses

and to the victims and denied his motion for a mistrial. We

find no error and affirm.

## Factual Background

Brooks was indicted and ultimately convicted of committing various sexual offenses against several minors:  L.M., A.G., De.M., R.M., and D.M.[1]  The minors testified for the Commonwealth at the trial, as did their fathers.

During pretrial voir dire, the judge asked the venire members:  "Are any of you related by blood or marriage to any of those persons against whom the alleged offenses were committed, or do you know them?"  All the jurors responded in the negative.  However, after the first day of the trial, the clerk received a telephone call from one of the seated jurors, Nancy Cook, expressing some concerns.  As a result, the judge conducted the following voir dire the next morning:

> THE COURT:  Ms. Cook, it has come to the Court's attention that you conversed with the Clerk about a matter that was of concern to you.
>
> MS. COOK:  Yes, sir.
>
> THE COURT:  All right. Would you go ahead, for the record, so that the attorneys get an opportunity to hear what your concern is and the Court gets an opportunity to evaluate your concern and see if it is well-placed or if it is not of great consequence.
>
> MS. COOK:  Okay.  My brother-in-law is the [victims'] great uncle.  And, I don't know them.
>
> THE COURT:  You want to run that by me gain?

---

[1] Because two of the minors have the same first and last name initials, we have identified one as De.M. and the other as D.M.

MS. COOK:  My brother-in-law.

THE COURT:  Explain that.

MS. COOK:  My sister's husband.  It is my
brother-in-law.  He is the girls' great
uncle and, I didn't know that yesterday.

* * * * * * *

THE COURT:  Don't think it would make a
difference.

MS. COOK:  No.  It is kind of like you wake
up at nighttime all of a sudden and it kind
of hits you, you know.  When [the victims'
uncle] came in, he looked familiar to me.  I
thought that I was introduced to him one
time . . . .  He just looked familiar to me,
and then I put the girls in place.

THE COURT:  You don't actually know any of
these people?

MS. COOK:  I don't know them.  I don't know
them from Adam.  I would [sic] know them if
I passed them on the street.  I wouldn't
know them.

THE COURT:  Mr. Ambrogi, any questions?

MR. AMBROGI:  No question.  No, sir.

THE COURT:  Mr. Crane, any questions of
this lady?

MR. CRANE:  No, Your Honor.

THE COURT:  Ma'am, you believe you can
continue to sit and hear this case and act
fairly and impartially?

MS. COOK:  Yes, I do.

THE COURT:  You believe you can follow the
instructions of law that the Court gives you
and decide this case fairly and impartially,
giving a fair trial to both sides?

MS. COOK:  Yes, sir.  I do.

- 3 -

> THE COURT: Ma'am, I appreciate your diligence by bringing this concern to our attention. It is important that a fair trial be had for all sides.
>
> MS. COOK: Yes. That is what I wanted.
>
> THE COURT: Ask you to retire back with the jury. Thank you, ma'am.

Defense counsel then asked the court to remove Cook from the jury. He argued, "[t]he fact that she is related would make it difficult for her to be unbiased in evaluating the evidence" and "in the interest of fairness it is important not to have relatives of the prosecutrixes on the jury panel. We just don't know." The prosecutor opposed the motion, arguing that any relationship was remote. He also noted Cook's assertion that her decision would be unaffected by her brother-in-law's relationship to the victims.

Defense counsel renewed his objection and moved for a mistrial. The court denied the motion and stated that the relationship was not close enough to disqualify the juror. The court also found that "Mr. Brooks will receive a fair trial and will continue to do so with Mrs. Cook sitting as a jury member."

## Analysis

Brooks's appeal comes before this Court on a denial of a motion for a mistrial. Upon familiar principles, we will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court's ruling was prejudicial. Taylor v. Commonwealth, 25 Va. App. 12, 17, 486

- 4 -

S.E.2d 108, 110 (1997). "[T]he burden of establishing that probability [rests] upon the party moving for a mistrial." Green v. Commonwealth, 26 Va. App. 394, 401, 494 S.E.2d 888, 891 (1998) (citations omitted). Moreover, it is well settled that the credibility of witnesses and the weight accorded witnesses' testimony are matters that are within the province of the fact finder. Phan v. Commonwealth, 258 Va. 506, 513, 521 S.E.2d 282, 286 (1999); Brooks v. Commonwealth, 15 Va. App. 407, 414, 424 S.E.2d 566, 571 (1992).

When the issue arises from a mid-trial challenge to a juror's impartiality, we "will reverse the trial court's decision only for an abuse of discretion," applying the same standard of review appropriate to appellate consideration of the trial court's decision to seat a venireperson. David v. Commonwealth, 26 Va. App. 77, 80, 493 S.E.2d 379, 381 (1997) (noting that juror impartiality is a factual determination, disturbed on appeal only for "manifest error"). Hence, we will not reverse "the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial." Id. (citations omitted).

The instant case involves a mid-trial challenge to a juror's impartiality. Brooks contends that Cook's relationship to the victims and to the Commonwealth's witnesses absolutely bars her from acting as a juror in the case, on the ground that, due to those relationships, she could not be impartial. Brooks

- 5 -

specifically invokes the rules governing consanguinity and affinity in support of his argument.

The Virginia Supreme Court held in Gray v. Commonwealth, 226 Va. 591, 311 S.E.2d 409 (1984), that "the long-standing, common-law rule disqualifying a venireman who is related, within the ninth degree of consanguinity or affinity, to a party to a suit" also "applies to a victim of a crime as well as to a party." Id. at 593, 311 S.E.2d at 410. The relationship at issue here involved Cook's brother-in-law, her sister's husband, who was the great uncle of the victims and, by implication, the uncle of the victims' fathers, who were expected to be called as witnesses in the case. Brooks contends that Cook was "absolutely disqualified" as a juror because she was related within the "ninth degree of consanguinity" to the alleged victims and their parents. We disagree.

"Consanguinity" is a "relation by blood." Doyle v. Commonwealth, 100 Va. 808, 810, 40 S.E. 925, 926 (1902). It is patent Cook was not related by blood to her sister's husband and, by extension, she was not related by blood to the victims or their fathers.

Cook was also not related to the victims or their fathers by affinity. Affinity is the relation of one spouse to the other spouse's kindred. Id. "'Affinity properly means the tie which arises from marriage betwixt the husband and the blood relatives of the wife, and between the wife and the blood

- 6 -

relatives of the husband. . . . [T]here is no affinity between the blood relatives of the husband and the blood relatives of the wife.'" Norris v. Presley, 290 So. 2d 643, 645 (Ala. 1974) (citations omitted). Here, the relationship at issue did not involve Cook and her husband's blood relatives. Rather, it involved a relationship between her sister's husband and his blood relatives. We conclude that the relationship does not fall within the definition of affinity.[2] See Doyle, 100 Va. at 810-11, 40 S.E. at 926 (finding that a juror, who was the nephew of a man related by marriage to kindred of the victim, was not disqualified from sitting through "affinity"); see also Anderson v. State, 2 So. 2d 461, 462 (Ala. Ct. App. 1941) (finding that a juror in a murder case, who was the brother-in-law of the victim's sister, was not disqualified because "[n]o relationship by consanguinity or affinity is presented as would disqualify said juror").

Moreover, Brooks has the burden of establishing that he was prejudiced by the trial court's decision not to grant his motion for a mistrial. See Green, 26 Va. App. at 401, 494 S.E.2d at 891. "To determine if a trial court's denial of a motion for a mistrial was prejudicial, when a juror's conduct is at issue, we

_____

[2] Cook's sister is arguably related to the victims and their fathers by affinity; affinity is the relationship between one spouse and the blood relatives of the other spouse. It does not follow, however, that Cook is, therefore, related to the victims and their fathers by affinity.

- 7 -

must look to the juror's possible bias. The existence of an individual juror's possible bias or partiality is a question of fact to be determined by the trial court." Perez v. Commonwealth, 40 Va. App. 648, 655, 580 S.E.2d 507, 509 (2003) (citing Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985)).

Brooks contends that, even if Cook is not excluded from serving as a juror in this case in accordance with the principles of consanguinity and affinity, her familial relationship, in and of itself, gives rise to inherent bias on her part and would affect her decision-making. Brooks's argument is a simple recast of his contentions rooted in the principles of consanguinity and affinity, which we have determined do not apply as a bar to Cook's serving as a juror in this case. Therefore, we reject this argument because no presumption of bias may be said to arise by virtue of the relationship itself.

Reviewing Brooks's contention factually, we find, furthermore, that nothing in the record supports the conclusion that Cook would be unable to fairly try the case. The Supreme Court of Virginia has set out the following standard for appellate review of the trial court's decision whether to retain or exclude prospective jurors:

> Upon appellate review, this Court gives
> deference to the trial court's decision
> whether to retain or exclude prospective

> jurors. This is because the trial judge has observed and heard each member of the venire and is in a superior position to evaluate whether the juror's responses during voir dire develop anything that would prevent or substantially impair the juror's performance of duty as a juror in accord with the court's instructions and the juror's oath. A trial court's decision on this issue will be affirmed absent a showing of manifest error. And, a juror's entire voir dire, not isolated portions, must be considered to determine a juror's impartiality.

Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999) (citations omitted). We cannot say that the trial court's finding that Cook was an impartial juror was manifest error. See id.

Finally, we address whether the trial court erred in denying Brooks's motion to strike Cook for cause on the ground that her participation as a juror in the case eroded public confidence in the integrity and fairness of the judicial process. See Medici v. Commonwealth, 260 Va. 223, 532 S.E.2d 28 (2000); Patterson v. Commonwealth, 39 Va. App. 658, 576 S.E.2d 222 (2003). Contrary to the argument of the Commonwealth that the issue is not properly before us because Brooks failed to raise it before the trial court and did not raise it on appeal, under the Supreme Court's holding in Medici, by implication, the question of public confidence is inherent in the jury selection process and is necessarily implicated when a juror's retention is purportedly improper. Medici, 260 Va. at 227, 532 S.E.2d at 31. In Medici, the issue of public confidence was not listed as

a question on appeal; nor did the defendant make an objection at trial on the issue of public confidence.[3]  The Virginia Supreme Court, nonetheless, addressed the question and reversed the defendant's conviction based on the trial court's failure to strike a juror who had a relationship with the office of defendant's counsel, finding that "permitting [the potential juror] to sit [on the jury] . . . would weaken public confidence in the integrity of criminal trials."  Medici, 260 Va. at 227, 532 S.E.2d at 32.

Relying on Medici and its progeny, this Court stated in Patterson:

> The Supreme Court cases on this issue do not indicate that prior appellants specifically raised "public confidence" at the trial level, but instead suggest the trial judge must specifically consider the effect that placing the venireman on the jury will have on the public's confidence in the judicial system. . . .

Patterson, 39 Va. App. at 666, 576 S.E.2d at 226 (citations and quotations omitted).  "We conclude . . . that an analysis of 'public confidence' is inherent in any appellate review of a juror's impartiality . . . ."  Id. at 669, 576 S.E.2d at 228

---

[3] A review of both the record and the briefs to the Supreme Court indicates the arguments at trial and on appeal were general arguments about the error in seating the juror at issue. Public confidence in the integrity of the judicial process was not raised as a ground for reversal at the trial level or on appeal.

(emphasis added).[4]  We therefore address the question, as it is inherent in Brooks's contention that the trial court's seating of the juror was improper, notwithstanding Brooks's failure to raise it at the trial court and on appeal.

We find that seating Ms. Cook as a juror, under the circumstances of this case, would not erode public confidence in the integrity of the judicial process.  As noted earlier, the relationship between the juror and witness was not one of either consanguinity or affinity, which would require her removal from the jury on the ground that "the law presumeth that one kinsman doth favor another more than a stranger."  Jacques v. Commonwealth, 51 Va. (10 Gratt.) 690, 694 (1853).  Thus, as a matter of law, Ms. Cook's relationship by marriage to the victims and the Commonwealth's witnesses is treated as remote and tenuous, a factor to be considered in resolving this issue. Moreover, she was questioned at length regarding the relationship.  She stated that she "thought she was introduced to [him] one time" because he "looked familiar."  However, when the judge asked Ms. Cook, "You don't actually know any of these people," she responded, "I don't know them.  I don't know them from Adam."

_____

[4] We note that, in Patterson, the issue of public confidence was raised on appeal in appellant's brief to this Court. However, as noted above, it was not raised on appeal in Medici, and we find that, as a Supreme Court case, Medici controls our decision to address the question in the case at bar.

- 11 -

We cannot say that the public's confidence in the integrity of the process would be undermined by the seating of an unbiased juror who was remotely related, by marriage, to the victims' great uncle and to two of the Commonwealth's witnesses, and whom the juror "[did not] know from Adam."

## Conclusion

Because we find Cook was not related by consanguinity or affinity to the victims or to any witnesses in the case, we hold the trial court properly refused to strike Cook for cause. Additionally, we find Brooks failed to meet his burden of establishing that the trial court's denial of his mid-trial motion for a mistrial, stemming from Cook's presence on the jury, resulted in a manifest probability of prejudice. Finally, we find that public confidence in the integrity of the judicial process would not be undermined by Ms. Cook's service as a juror in the case at bar because the relationship at issue was too remote and tenuous to create the perception of bias. We, accordingly, hold that the trial court did not err in denying Brooks's motion for a mistrial and affirm his convictions.

Affirmed.

Clements, J., concurring.

While I agree with the holding of the majority opinion that the trial court did not err in denying Brooks's motions for the removal of Cook from the jury and for a mistrial, I write separately because I find it unnecessary and, indeed, inappropriate, under the circumstances of this case, to address sua sponte the issue of public confidence.

We have consistently held that we will not address an issue that was not raised on appeal. See, e.g., Shoup v. Shoup, 37 Va. App. 240, 253 n.6, 556 S.E.2d 783, 790 n.6 (2001) (en banc); Frias v. Commonwealth, 34 Va. App. 193, 196 n.1, 538 S.E.2d 374, 375 n.1 (2000). "On appeal, we [will] consider only the issues raised." Mullins v. Commonwealth, 39 Va. App. 728, 733, 576 S.E.2d 770, 772 (2003); see also Richardson v. Moore, 217 Va. 422, 423 n.1, 229 S.E.2d 864, 865 n.1 (1976) (stating the Court would "express no opinion" on a particular question because that question "was not raised on appeal").

In this case, Brooks argues Cook was "absolutely disqualified" because she was related "within the ninth degree of consanguinity" or affinity to the "alleged victims in this case and their parents." He also argues, as the Commonwealth notes, that Cook "may have been inherently biased by her familial relationships." Brooks, however, makes no claim on appeal that Cook's presence on the jury would erode public

confidence in the integrity of the judicial process. He simply does not challenge the trial court's rulings on that ground.

Moreover, in my view, none of the decisions by the Supreme Court of Virginia addressing the issue of public confidence in the integrity of the judicial process requires us to consider the public confidence issue when, as here, it has not been raised on appeal. As noted in the instant majority opinion, the Supreme Court reversed the appellant's conviction in Medici v. Commonwealth, 260 Va. 223, 532 S.E.2d 28 (2000),[5] on the basis of the issue of public confidence even though that issue "was not listed as a question on appeal." The Supreme Court's opinion in Medici, however, "listed" only the overall issue of "whether the trial court erred in refusing to strike for cause a potential juror," without identifying the specific issues addressed by the parties on appeal. Id. at 226, 532 S.E.2d at 30. Consequently, it is not possible to tell from the opinion in Medici whether the issue of public confidence was raised on appeal by the appellant in that case or whether the Supreme Court addressed the issue sua sponte. The same may be said of each of the other opinions in which the Supreme Court has focused on the issue of public confidence with regards to the jury-selection process, none of which indicate whether the appellant raised the issue on appeal. See Barrett v. Commonwealth, 262 Va. 823, 553 S.E.2d

---

[5] The opinion in Medici was released approximately two years before Brooks filed this appeal.

731 (2001); Cantrell v. Crews, 259 Va. 47, 523 S.E.2d 502 (2000).

Likewise, while we addressed the issue of public confidence in Patterson v. Commonwealth, 39 Va. App. 658, 576 S.E.2d 222 (2003), and Perez v. Commonwealth, 40 Va. App. 648, 580 S.E.2d 507 (2003), neither case is controlling here because, unlike Brooks, the appellants in both of those cases specifically raised the issue of public confidence on appeal. Accordingly, neither of those decisions requires our consideration of the issue of public confidence in this case.

I, therefore, believe that raising the issue of public confidence on our own accord is contrary to established principles of appellate review and would not do so.

Fitzpatrick, C.J., dissenting.

I respectfully dissent from the majority opinion. While I agree with the majority that the factual scenario presented in the instant case does not meet the traditional technical definitions of "consanguinity" and "affinity," it is a distinction without a difference. Juror Cook's brother-in-law was the uncle of two of the Commonwealth's witnesses and the great-uncle of all five victims. This relationship, in my opinion, triggers the public confidence analysis recently enunciated by the Supreme Court in Cantrell v. Crews, 259 Va. 47, 51, 523 S.E.2d 502, 504 (2000), Medici v. Commonwealth, 260 Va. 223, 226-27, 532 S.E.2d 28, 30-31 (2000), and Barrett v. Commonwealth, 262 Va. 823, 826-27, 553 S.E.2d 731, 733 (2001).

> Public confidence in the integrity of the process is at stake. It cannot be promoted when a sitting juror is, at the time of trial, a client of the law firm representing one of the parties to the litigation. . . . This is true even though, as the record shows, the juror states that the circumstances of her [relationship] would have no "bearing" on her judgment as a juror and that she could "be totally fair to both sides."

Cantrell, 259 Va. at 51, 523 S.E.2d at 504. See also Medici (reversed seating of a juror whose husband had been murdered and the accused was represented by the Office of the Public Defender, Medici's counsel's employer); Barrett (reversed seating of a prospective juror whose brother was a police officer expected to testify).

- 16 -

While "a juror's family relationship to a police-officer witness does not require dismissal per se of the juror if the trial court is satisfied that the juror can stand indifferent in the cause, . . . [failure to strike the juror for cause] makes it unlikely that the public would have confidence in the judicial process." Barrett, 262 Va. at 826, 553 S.E.2d at 733.

Recently, in Patterson v. Commonwealth, 39 Va. App. 658, 576 S.E.2d 222 (2003), we again addressed the importance of analyzing on a case-by-case basis the importance of public perception and confidence in an impartial venire. "In a series of opinions decided over the last several years, the Supreme Court of Virginia has clearly found that inherent in appellate review of impartiality is a determination of whether 'the public would have confidence in the integrity of the process' if the prospective juror remained." Id. at 667, 576 S.E.2d at 227.

The facts of this case clearly dictate that the seating of Juror Cook, who was related, albeit by marriage rather than blood, to all five child victims and two additional Commonwealth's witnesses, was reversible error. Like the jurors in Cantrell, Medici, and Barrett, Juror Cook indicated and the trial court found that she would not be affected by her relationship with the witnesses. However, our inquiry does not end there. We must address the objective impact upon the public as a whole. What could undermine confidence in an impartial judicial system more readily than a juror who is a relative of

- 17 -

both the victims and the Commonwealth's witnesses?  On these facts, I would reverse the convictions and remand for a new trial, if the Commonwealth be so advised.

For these reasons, I respectfully dissent.