COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


THEODORE EDWARD GREEN
                                          OPINION BY
v.          Record No. 2774-96-1    JUDGE RICHARD S. BRAY
                                        JANUARY 27, 1998
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Everett A. Martin, Jr., Judge

            James O. Broccoletti (Zoby & Broccoletti, on
            brief), for appellant.

            John K. Byrum, Jr., Assistant Attorney
            General (Richard Cullen, Attorney General, on
            brief), for appellee.


     A jury convicted Theodore Edward Green (defendant) of second

degree murder and related use of a firearm.  Defendant complains

on appeal that the trial court erroneously denied his motion for

a mistrial based upon alleged juror misconduct and later

disallowed post-verdict investigation of the incident.  Finding

no error, we affirm the convictions.

                              I.

     A venire was assembled for trial of defendant on indictments

charging the murder of Walter C. Williams and attendant use of a

firearm.  After advising the panel that the purpose of <u>voir</u> <u>dire</u>

was to "ensure that [no one was] related to any of the parties,"

conscious of any "interests or bias in the case," or otherwise

ineligible to serve on the jury, the following questions,

pertinent to this appeal, together with the collective responses

of the venire, were propounded by the court and counsel:
     The Court:     Have any of you or have any members

of your immediate family been the
victim of a crime involving the use
of a firearm?

The Jurors:     No.

The Court:      Have any members of your immediate
family been the victim of a
homicide?

The Jurors:     No.

The Court:      Have you or have any members of
your immediate family ever been
prosecuted by the Norfolk
Commonwealth Attorney's Office?

The Jurors:     No.

                *   *   *   *   *   *   *

The Court:      Do any of you have any interest in
the trial or outcome of this case?

The Jurors:     No.

The Court:      Have any of you acquired any
information about the alleged
offense or the accused from any
source outside of the courtroom?

The Jurors:     No.

The Court:      Our system of justice presumes the
accused is innocent until proven
guilty.  Is each of you able to            keep
this presumption alive in your             mind
throughout the entire case             until you have
entered the jury            room to begin you [sic]
deliberations?

The Jurors:     Yes.

The Court:      You understand the Commonwealth
must prove the defendant's guilt
beyond all reasonable doubt?

The Jurors:     Yes.

                *   *   *   *   *   *   *

- 2 -

```
The Court:      Have any of you expressed or formed
                any opinion concerning the guilt or
          innocence of the accused?

The Jurors:     No.

The Court:      Are any of you sensible of any bias
                or prejudice for or against the
          Commonwealth or the accused?

The Jurors:     No.

                *   *   *   *   *   *   *

The Court:      Do any of you know of any reason
          whatever which would prevent you                 from
giving a fair and impartial            trial to the
Commonwealth and to               the accused based
solely on the law               and the evidence?

The Jurors:     No.

                *   *   *   *   *   *   *

Defendant's
 Attorney:      Are there any jurors among you that have
                the opinion that just because the
                defendant has been charged under the
                pending indictments that he's guilty?

The Jurors:     No.

Defendant's
 Attorney:      Have any of you been the victim of
                a crime involving violence?

The Jurors:     No.
```

Counsel then exercised their respective peremptory challenges and a jury was impaneled, free from exception.

II.

The Commonwealth's evidence established that defendant inflicted gunshot wounds on both himself and Williams, the victim, during an argument between the two men.  Williams later

- 3 -

died as a result of his injuries.  Commonwealth witness Edith Harris testified that she observed a "drive-by shooting" but was unsure if a car was "involved," didn't recall if either the "shooter" or victim was in a vehicle, and could identify no one involved in the offenses.  However, witness Darnell Blunt testified that defendant exited a car, "confronted" and "swung" at the unarmed Williams, "shot himself" "in the leg," "turned around and shot" Williams, and "got in the car and left."

Defendant testified that he was walking toward his parked automobile, after conversing with a friend, when he "saw a car turning around in my peripheral vision . . . [and] somebody in the car . . . said, [']there goes the M . . . F . . . right there.[']"  These remarks were followed by several gunshots, one of which struck him in the leg.  He denied knowing or injuring the victim or possessing a firearm during the incident.  Defense witness Melanie Woodhouse had observed "firing" from a vehicle that rounded the corner "real fast" while defendant was "standing . . . talking" with someone.

### III.

After several hours of jury deliberations, the foreman announced that, "[w]e have a hung jury."  Without objection, however, deliberations resumed following an "Allen charge" by the trial court.  Shortly thereafter, the court received a handwritten note from the jury advising that, "One of the jurors has stated that relatives of hers were involved in a drive-by

- 4 -

shooting" and inquiring, "Would or could this have any influence or importance in this case?"[1]

Defendant immediately moved for a mistrial, arguing that no juror had disclosed personal or immediate family victimization by "violence" but "now . . . [a juror is] asking us if . . . she is impartial because . . . a relative . . . was a victim of a drive-by shooting."  Noting that the question did not identify either the juror or a member of her immediate family as a victim, the status referenced in voir dire, the court denied defendant's motion and, without objection, instructed the jury to "decide this case on the testimony and exhibits . . . [in] evidence," without considering "[t]he experience of a relative of a juror."  Deliberations resumed, followed by verdicts of guilty, related sentencing proceedings, and discharge of the jury.

Defendant requested a presentence report and an attendant hearing was conducted several months after trial.  Defendant then renewed his earlier mistrial motion "based upon the question posed by the jury" in its note to the court, asserting that it suggested a lack of "impartiality" and juror "misconduct" during voir dire.  In the alternative, defendant urged the court to recall the "whole jury," identify the juror in issue, and permit defendant to examine her with respect to misconduct and bias.

---

[1]A second note requested "a copy of Ms. Edith Harris' report to the police," describing her "testimony [as] vague, yet very important."  In response, the court instructed the jury that the document was "not admissible into evidence."

The court overruled both motions, resulting in this appeal.

                                    IV.

     Defendant first contends the note clearly revealed that an
unidentified juror had failed to disclose during voir dire that
she "had a relative who was a victim of a crime involving a
firearm," despite inquiry by the court.  He maintains that "an
affirmative answer . . . could have led to a motion to exclude
for cause as a result of bias" or promoted a more informed
exercise of peremptory strikes, thereby avoiding the "implied
bias" of the juror.

          We are mindful that
               [t]he right to a trial by an impartial jury
               is guaranteed under both the United States
               and Virginia Constitutions.  This guarantee
               is reinforced by legislative enactment and by
               the rules of court.  It is the trial judge's
               duty to secure an impartial jury for the
               parties.  Resolution of the question of a
               juror's impartiality depends upon the facts
               and circumstances of each particular case.
               At a minimum, . . . the law requires that the
               juror "stand indifferent in the cause."  Any
               reasonable doubt regarding the prospective
               juror's ability to give the accused a fair
               and impartial trial must be resolved in favor
               of the accused.

Swanson v. Commonwealth, 18 Va. App. 182, 184-85, 442 S.E.2d 702,
703-04 (1994) (quoting Gosling v. Commonwealth, 7 Va. App. 642,
645, 376 S.E.2d 541, 543-44 (1989)).

     However, to be entitled to a mistrial for jury misconduct
arising from voir dire,
               "a party must first demonstrate that a juror
               failed to answer honestly a material question
               on voir dire, and then further show that a

> correct response would have provided a valid
> basis for a challenge for cause.  The motives
> for concealing information may vary, but only
> those reasons that affect a <u>juror's
> impartiality</u> can truly be said to affect the
> fairness of a trial."

<u>Taylor v. Commonwealth</u>, 25 Va. App. 12, 18, 486 S.E.2d 108, 111 (1997) (emphasis added) (quoting <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 556 (1984)).  Thus, "juror misconduct does not automatically entitle either litigant to a mistrial." <u>Robertson v. Metropolitan Washington Airport Authority</u>, 249 Va. 72, 76, 452 S.E.2d 845, 847 (1995).  The trial court must also find a probability of prejudice, with the "burden of establishing that probability . . . upon the party moving for a mistrial." <u>Id.</u>

When the issue arises from a "midtrial" challenge to a juror's impartiality, we "will reverse the trial court's decision only for an abuse of discretion," applying the "same standard" of review appropriate to appellate consideration of a decision to seat a venireperson.  <u>Hunt v. Commonwealth</u>, 25 Va. App. 395, 399, 488 S.E.2d 672, 674 (1997); <u>see</u> <u>David v. Commonwealth</u>, 26 Va. App. 77, 80, 493 S.E.2d 379, 381 (1997) (juror impartiality a factual determination, disturbed on appeal only for "manifest error").  Hence, we will not overturn "the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial." <u>Taylor</u>, 25 Va. App. at 17, 486 S.E.2d at 110.

Here, the jury's note indicated that "one of the jurors" had

"relatives . . . involved in a drive-by shooting" and questioned the "influence or importance" of such circumstances to "this case."  On voir dire, the panel had been asked, "[h]ave any of you or . . . any member of your immediate family" been "the victim of a crime involving . . . a firearm," "homicide," or "violence."  (Emphasis added).  Thus, lacking a disclosure that either a juror or immediate family member had been the victim of an offense named in the court's inquiry, the note did not establish an untruthful response on voir dire.  Moreover, the note clearly did not facially demonstrate bias or partiality.  Thus, defendant failed to demonstrate both juror misconduct and bias.[2]

Further, the trial court, with the agreement of counsel, specifically instructed the jury to ignore "the experience of a relative of a juror" and "decide this case on the testimony and exhibits [in] evidence."  "Unless the record shows to the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given."  Albert v. Commonwealth, 2 Va. App. 734, 741, 347 S.E.2d 534, 538 (1986) (citation omitted).

V.

Defendant next contends that the trial court erroneously denied his post-verdict motion to recall the "whole jury" and

_____

[2]Responses to other questions posed to the panel on voir dire confirmed a fair and impartial jury.

- 8 -

identify and investigate the juror referenced in the note. The record discloses that defendant made no effort to pursue such relief when the issue first arose during trial. Instead, fully aware of the note's contents and implications, defendant elected to forego a timely inquiry and await the verdict.

> "To permit prisoners to avail themselves, after verdict, of pre-existing objections to the competency of jurors, as a matter of right, would not only be unreasonable, but most mischievous in its consequences . . . . A prisoner knowing, or <u>willfully remaining ignorant</u> of the incompetency of a juror, would take the chances of a favorable verdict . . . ; and if the verdict should be adverse, would . . . [seek to] avoid its effect."

<u>Allen v. Commonwealth</u>, 122 Va. 834, 845-46, 94 S.E. 783, 787 (1918) (emphasis added) (quoting <u>Bristow's Case</u>, 15 Gratt. (56 Va.) 648). Thus, defendant's "conscious decision to find out what the jury was going to do . . . in hopes that [it] might acquit" constituted a waiver of his right to further inquiry.[3] <u>Gray v. Hutto</u>, 648 F.2d 210, 211 (4th Cir. 1981); <u>United States v. Breit</u>, 712 F.2d 81, 82 (4th Cir. 1983); <u>see</u> <u>Robertson</u>, 249 Va. at 76-77, 452 S.E.2d at 847; <u>Royal v. Commonwealth</u>, 2 Va. App. 59, 69-70, 341 S.E.2d 660, 666 (1986) (<u>rev'd on other grounds</u>, <u>Royal v. Commonwealth</u>, 234 Va. 403, 362 S.E.2d 323 (1987)).

---

[3]Such circumstances are clearly distinguishable from instances of juror misconduct first discovered post-verdict. <u>Cf.</u> <u>Robertson</u>, 249 Va. at 76, 452 S.E.2d at 847, with <u>Commercial Union Ins. Co. v. Moorefield</u>, 231 Va. 260, 266-67, 343 S.E.2d 329, 333 (1986), and <u>Haddad v. Commonwealth</u>, 229 Va. 325, 330, 329 S.E.2d 17, 20 (1985), and <u>Kearns v. Hall</u>, 197 Va. 736, 743, 91 S.E.2d 648, 653 (1956).

Accordingly, we affirm the convictions.

**<u>Affirmed.</u>**
