COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


ELVA ROSEMARY NIXON
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1768-06-3                   JUDGE ROBERT P. FRANK
                                                       MARCH 25, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CARROLL COUNTY
                                Brett L. Geisler, Judge

            Robert M. Galumbeck (Michael L. Dennis; Clinton S. Kegley;
            Galumbeck, Dennis & Kegley, on brief), for appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Elva Rosemary Nixon, appellant, was convicted by a jury of second-degree murder, in

violation of Code § 18.2-32; robbery, in violation of Code § 18.2-58; and two counts of using a

firearm while committing those offenses, in violation of Code § 18.2-53.1.  On appeal, she contends

the trial court erred (1) in not granting her motion to suppress her statements; (2) in failing to strike

a juror for cause; and (3) in failing to grant her post-trial motions for a mistrial based on the use of

cell phones by some jurors during deliberations.  For the reasons stated, we affirm the trial court.

                                    BACKGROUND

                                   Motion to Suppress

        On January 5, 2004, Donald Brady was shot near his residence.  That same day, Investigator

Venton Smith of the Carroll County Sheriff's Department received a report from a local hospital

that a person, later identified as appellant, had been recently admitted with a gunshot wound to the

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

face.  Investigator Smith went to the hospital to investigate the report, not knowing if there was any connection between the two shootings.

Upon arriving at the hospital, Smith learned that appellant was to be transferred to a different hospital in Roanoke.  Investigator Smith and Sheriff Manning of the Carroll County Sheriff's Department spoke to appellant while she was being treated in the emergency room.  Appellant's daughter and nurses were present during the interview.

At the hearing on appellant's motion to suppress her statements, Investigator Smith described appellant as talkative, cooperative, and willing to answer questions during this first interview.  Investigator Smith stated that appellant appeared to be calm and aware of her surroundings, and did not appear to be under any apparent emotional distress or mental disability.  Investigator Smith testified that appellant told him that she was not on any drugs.  The conversation lasted approximately thirty-five to forty minutes.  Investigator Smith characterized appellant's narration of the incident as "vivid" and well-articulated.

At some point in the conversation, Smith told appellant that the description of where she was shot matched the location where Brady was shot.  Smith showed appellant a gray cap recovered from the scene of Brady's shooting.  She identified the cap as the one she wore earlier that night.  Based on the statements made by appellant and the evidence recovered from the scene of Brady's shooting, on January 6, 2004, officers obtained an arrest warrant charging appellant with malicious wounding.[1]  However, the warrant was not served on appellant at that time.

After appellant was transferred to the hospital in Roanoke, Investigator Smith and Chief Deputy Glenn Nester of the Carroll County Sheriff's Department went to the hospital to obtain additional information from appellant.  Investigator Smith and Deputy Nester first spoke with appellant's husband, a former law enforcement officer.  Appellant's husband then talked to

---

[1] Brady died ten days later from the gunshot wound.

appellant, and appellant agreed to speak with the officers. This interview lasted approximately ten to fifteen minutes, and appellant's husband was in the room during the interview. The officers did not inform appellant that a warrant had been issued for her arrest, nor did they arrest her at that time. However, they did ask appellant to go to the sheriff's office "when she was able" to give them a statement after her release from the hospital.

On January 12, 2004, appellant, accompanied by her husband, voluntarily[2] went to the sheriff's office to make a statement regarding the incident. Investigator Smith read appellant her rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and appellant, who had a college education, executed a form waiving her rights. Appellant's husband was present when she was read her rights and when she signed the waiver.

Investigator Smith interviewed appellant in Deputy Nester's office for approximately one hour. The door to the office remained open, and appellant's husband was in another office talking with Sheriff Manning, no more than twenty feet away. The door to that office was also open, and appellant could see her husband during the interview. Appellant's husband testified that he could hear the conversation taking place between his wife and the officers. Appellant gave a written statement, and drew a map of the scene of the shooting. Investigator Smith indicated that appellant was cooperative and appeared to be alert and that he saw no evidence of drug or alcohol use or any evidence of emotional or mental disability. After appellant completed her statement, she was arrested for malicious wounding.

At no time during any of the three interviews did the police tell appellant she was a suspect in Brady's shooting.

---

[2] At the hearing on the motion to suppress, appellant's husband testified that appellant wanted to go to the sheriff's office to make a statement in order to "try to help them out with the . . . case."

- 3 -

Appellant moved to suppress her statements, raising the same issues that she argues on appeal. In denying the motion to suppress, the trial court found appellant was not subjected to custodial interrogation at either of the first two interviews that occurred at the hospitals and, therefore, the police were under no duty to advise appellant of her Miranda rights. The court also concluded that her statements during these first two interviews were voluntary. As to the third interview, the trial court found that appellant voluntarily came to the sheriff's office, accompanied by her husband, for the purpose of making a statement. The trial court held that appellant voluntarily waived her Miranda rights and concluded that her subsequent statements were made freely and voluntarily.

## Jury Selection

At trial, the entire venire was questioned first by the court, and then *voir dire* was conducted in small panels of approximately four to five jurors.

During the *voir dire* of jury panel three, Juror Smith indicated that he had never been charged with a criminal offense, and then later acknowledged that he had some experience with police.[3] During individual *voir dire*, appellant asked Juror Smith whether he had ever been charged with any crimes. Juror Smith responded that he was charged with "public drunkenness" "due to [his] diabetes." Juror Smith stated that he was convicted of a "Class 1 or 4 misdemeanor," but he could not remember the punishment imposed. This charge occurred "four or five months ago." Juror Smith also could not remember the prosecutor involved in his case.

---

[3] Juror Smith also expressed some concern about the impact his diabetes would have on his ability to serve as a juror, and stated that he had some reservations about following the instructions given by the court if he disagreed with the law they contained. During individual *voir dire*, Juror Smith stated that his diabetes normally did not pose a problem and that he could base his decision in arriving at a verdict only on the evidence presented and the instructions given by the court. Appellant never raised any objection to Juror Smith on either of those grounds when she moved to strike him for cause.

Upon further questioning by appellant, Juror Smith acknowledged that, "there was another charge that day, but it was dropped." He said, "I think it was something like breaking and entering with the intent to do something. I can't remember now exactly what it was." Juror Smith believed that he had been treated fairly in connection with the case.

Appellant moved to strike Juror Smith for cause, contending only that Juror Smith's credibility concerning his criminal charges "would tend to put all of his answers in question . . . ." The trial court found Juror Smith to be qualified, noting that Juror Smith stated that "he could set aside any personal preference, he could sit and hear the evidence and take the jury instructions."

The trial court then asked both appellant and the Commonwealth whether there was "[a]nything else you want to put on the record with regard to this gentleman." Appellant noted only that, "[w]e would just state that same objection is based upon the fact that he had original [sic] stated no to the question about charging and then a conviction and then remembering another charge."

Appellant used a peremptory strike to remove Juror Smith from the panel. Prior to opening statements, appellant renewed her objection concerning Juror Smith "for the reasons previously stated."

Appellant filed a post-trial motion to set aside the verdict, again contending the trial court erred in not striking Smith for cause. In her memorandum in support of her motion, appellant argued the following reasons that Juror Smith should have been struck for cause: (1) that Juror Smith's diabetes impaired his ability to complete his jury service; (2) that Juror Smith stated that he did not know if he could follow the instructions of the court and that the later rehabilitation on that issue was improper as it came from the court and not from the juror; and (3) that Juror Smith lacked credibility based on his answers regarding his prior criminal charges.

The trial court denied appellant's motion to set aside the verdict on these grounds, concluding:

> The Court's opinion was that Mr. Smith relayed to the Court his ability to be fair and impartial. The Court feels that he was qualified, that he could do his job impartially and execute those duties even in light of what the record reflects with regard to his criminal past.

### Jury Misconduct

During jury deliberations, in the penalty phase, appellant brought to the trial court's attention that some jurors had cell phones in the jury room during deliberations. Appellant argued that this may be the reason that the jury, during deliberations on the guilt phase of the trial, had asked several questions "about things that were not in evidence."

Appellant asked the trial court to determine what cell phone numbers were used and to obtain the records of calls made and received during deliberations, during both the guilt and penalty phases of trial. Appellant asked the trial court to review those records *in camera* and to advise appellant accordingly. Appellant also asked the court to collect the cell phones. At that time, appellant did not request that the jurors be *voir dired* as to the content of their cell phone conversations, and appellant did not allege that any of the jurors discussed the case with anyone outside of the jury room.

The Commonwealth opposed the motion, noting that at many times during the trial, jurors had asked permission to call family members concerning childcare or other personal matters.[4] The Commonwealth argued that jurors are presumed to follow the trial court's instructions and there had been no reason to believe they had failed to abide by the court's admonitions not to discuss the case with anyone outside of the jury room.

---

[4] Neither appellant nor the Commonwealth refers to specific pages in the appendix where these requests for phone calls were made.

The trial court initially took the motion under advisement, and then later denied the motion after the jury returned its sentencing verdict. The trial court concluded,

> The jury is presumed to know and be able to follow the instructions. There's no allegations with respect that they have had any misconduct.
>
> Juries, from time to time, ask questions. That's totally consistent with what they do.

After the sentencing phase of the trial, the jury was discharged on January 27, 2006.

In a post-trial motion to set aside the verdict, filed May 31, 2006, appellant argued, for the first time, that the trial court should interview the jurors to determine if misconduct had occurred due to cell phone use during deliberations. The hearing on that motion was held on June 21, 2006.

The trial court denied appellant's motion to *voir dire* the jurors in reference to their use of cell phones. The trial court concluded there was no "substantial or reasonable belief" of any communication between jurors and others concerning the trial. While acknowledging a juror made a phone call concerning his clothes, the trial court found there was "no reasonable basis" to believe that any juror discussed the trial with any outside person. The trial court further noted it had admonished the jury on several occasions not to discuss the trial with any outsider.

ANALYSIS

Motion to Suppress

Appellant contends that her statements made in the two hospitals were illegally obtained because she was not advised of her rights under Miranda v. Arizona, 384 U.S. 436 (1966).[5]

---

[5] Appellant also argues that she was "heavily medicated" during the second interview. However, appellant does not indicate whether this factor would go towards a consideration of the voluntariness of her statements, or the voluntariness of her waiver.

In any event, appellant's contention that she was heavily medicated relies on the testimony of her husband at the hearing on the motion to suppress. Appellant's husband testified that, at the time of the second interview, appellant was receiving morphine and that appellant's speech was "slurred" and she was "extremely tired."

Appellant's argument is premised on her conclusion that she was subjected to "custodial interrogation."

"[I]f the police take a suspect into custody and then ask him questions without informing him of the rights enumerated [in Miranda], his responses cannot be introduced into evidence to establish his guilt." Berkemer v. McCarty, 468 U.S. 420, 429 (1984). "However, 'police officers [are] not required to administer Miranda warnings to everyone whom they question,' and Miranda warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).

"Whether a suspect is 'in custody' under Miranda is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" Id. at 564, 500 S.E.2d at 262 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). The determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994). "If a reasonable person in the suspect's position would have understood

However, Investigator Smith described appellant during her interviews as, alternately, "aware of her surroundings," "alert," and "articulate." Appellant gave detailed descriptions of the shooting incident. Investigator Smith testified specifically that appellant did not appear to be under the influence of any drugs, alcohol, or emotional or mental disability at any of the interviews. According to Investigator Smith, appellant never indicated that she was on any medication during any of the interviews, and none of appellant's family members, at least one of whom was present for each interview with police, indicated to Investigator Smith that she was on any medication that would impair her ability to answer questions.

The trial court was entitled to believe Investigator Smith's testimony over that of appellant's husband. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trier of fact is not required to accept a witness' testimony, but instead is free to "rely on it in whole, in part, or reject it completely." Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Thus, we do not consider appellant's contention that she was heavily medicated during her second interview.

- 8 -

that he or she was under arrest, then the police are required to provide <u>Miranda</u> warnings before questioning." <u>Harris</u>, 27 Va. App. at 564, 500 S.E.2d at 262. The objective circumstances "are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned" would perceive his or her freedom to leave. <u>Stansbury</u>, 511 U.S. at 325.

> Among the circumstances to be considered when making the determination of whether a suspect was "in custody" are (1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual. No single factor is dispositive of the issue.

<u>Harris</u>, 27 Va. App. at 565-66, 500 S.E.2d at 262.

Here, we should first note that appellant was not detained or restrained by the police.

> While [appellant's] freedom of movement was undoubtedly restricted throughout [her] hospitalization, [her] confinement was caused by [her] own physical incapacity – *not* police compulsion. At no time did the police attempt to physically restrain [appellant]: [she] was not handcuffed, nor did the police guard [her] hospital room to prevent [her] escape. Further, the [officers] did not impede [appellant's] release from the hospital. Rather, [appellant] left on [her] own accord.

<u>DeJesus v. State</u>, 655 A.2d 1180, 1191 (Del. 1995). "There are no facts to indicate that law enforcement officials were in any way involved in [appellant's] hospitalization or did anything to extend [appellant's] hospital stay and treatment." <u>United States v. Martin</u>, 781 F.2d 671, 673 (9th Cir. 1985). Both hospitals were neutral surroundings. The interview was of relatively short duration. In both interviews, appellant had family members present. The police did not advise appellant she was a suspect nor that they had warrants for her.

Considering all of these circumstances, we conclude that a reasonable person in appellant's position would have understood that her freedom was not restricted to a degree

associated with a formal arrest. Harris, 27 Va. App. at 564, 500 S.E.2d at 262; see also Webber v. Commonwealth, 26 Va. App. 549, 557, 496 S.E.2d 83, 87 (1998) (holding that the defendant was not in custody in the hospital while he was there with his injured child). Thus, we find that appellant was not in custody for purposes of Miranda and officers were not required to give appellant the warnings under Miranda before questioning her. The two statements appellant gave at the hospitals were admissible.

Appellant next argues her Miranda waiver was not voluntarily made, since the police failed to advise her she was a suspect and the police failed to advise her that warrants for her arrest were outstanding.[6] It appears appellant does not challenge the voluntariness of the statements at the sheriff's office, but only the voluntariness of her waiver. Appellant contends that this failure to advise her of the arrest warrant was a coercive tactic, making her waiver at the sheriff's office involuntary.

Appellant does not cite to any precedent, nor can we find any, for the proposition that officers must advise a suspect during questioning that they are in fact the target of the police investigation in order to validly obtain any statements from that suspect. Indeed, law enforcement officers are free to engage in intentional deception in questioning a suspect, if that deception does not rise to the level of coercion.

> "[C]onfessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." [Miranda,] 384 U.S. at 478. Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns.

---

[6] Part of appellant's argument as to "deception" relies on her husband's testimony that the officers told appellant and her husband that she was not a suspect and that they did not believe that she had committed the crime. However, Investigator Smith denied that any such statement was made by him, or made in his presence by Deputy Nester. Given our analysis on this issue, it is of no consequence whether these statements were made by the officers.

Illinois v. Perkins, 496 U.S. 292, 297 (1990); see also Moran v. Burbine, 475 U.S. 412 (1986) (holding that, where police officers fail to inform a suspect of his attorney's efforts to reach him, neither Miranda nor the Fifth Amendment requires suppression of a pre-arraignment confession, as the suspect's waiver was voluntary). "Even a lie on the part of an interrogating police officer does not, in and of itself, require a finding that a resulting confession was involuntary." Rodgers v. Commonwealth, 227 Va. 605, 616, 318 S.E.2d 298, 304 (1984).

Here, officers did not inform appellant that she was a suspect in Brady's shooting, and did not advise her that they had obtained a warrant for her arrest. Investigator Smith explained at the hearing on the motion to suppress that, given the fact that they were still investigating appellant's version of events, he believed that it was possible that police may uncover information that would have cleared appellant of any suspicion. However, he had probable cause to believe that she was involved, so he obtained the warrant in advance. Investigator Smith noted that such a practice is not unusual in investigations of this magnitude. Appellant points to nothing in the officers' failure to inform her that she was a suspect or that arrest warrants were outstanding that could be considered "coercive."[7]

For the foregoing reasons, we find that the trial court did not err in ruling all three of appellant's statements admissible at trial.

---

[7] Appellant's final argument on appeal regarding her motion to suppress is that the waiver of her rights under Miranda was invalid, as it was the product of the two initial statements she contends were illegally obtained. Appellant relies on Missouri v. Seibert, 542 U.S. 600 (2004), for this proposition. Appellant maintains that she "implicitly" waived her right to remain silent by giving statements at the hospitals and that this implicit waiver influenced her later written waiver at the sheriff's office.

However, appellant conceded at oral argument that, if we found that her first two statements at the hospitals were validly obtained and admissible, her argument under Seibert fails and we need not reach it on appeal. Thus, as we have found that appellant was not in custody for purposes of Miranda when she was questioned at the hospitals, we need not consider whether appellant "implicitly waived" rights to which she was not entitled. Her statements at the hospitals were voluntary, and do not bear on her later waiver of her Miranda rights at the sheriff's office.

<u>Jury Selection</u>

Appellant argues the trial court erred by failing to strike Juror Smith from the jury panel for cause because he failed to initially disclose he had been arrested during the panel *voir dire*, and then he revealed only one of two of his charges until he was questioned further by appellant. Thus, appellant argues that Juror Smith lacked credibility and that all of his answers on *voir dire* were questionable.[8]

_____

[8] Appellant also contends Juror Smith should have been dismissed for cause based on his physical aliment that impaired his ability to hear the case, based on his indication that there were instances where he would not follow the judge's instructions, and based on his "experience with the Commonwealth" in relation to his prior criminal charges. Appellant also argues that the trial court could not properly rehabilitate Juror Smith by asking him leading questions during individual *voir dire*. However, appellant never raised these objections to Juror Smith when she moved to strike him for cause. In requesting that Juror Smith be removed for cause, appellant only argued that the juror was not credible based on his answers to questions regarding prior criminal charges.

Appellant first argued these points in a post-trial motion to set aside the verdict. However, this objection was not timely.

> "To permit prisoners to avail themselves, after verdict, of pre-existing objections to the competency of jurors, as a matter of right, would not only be unreasonable, but most mischievous in its consequences . . . . A prisoner knowing, or willfully remaining ignorant of the incompetency of a juror, would take the chances of a favorable verdict . . .; and if the verdict should be adverse, would . . . [seek to] avoid its effect."

<u>Green v. Commonwealth</u>, 26 Va. App. 394, 402, 494 S.E.2d 888, 892 (1998) (quoting <u>Allen v. Commonwealth</u>, 122 Va. 834, 845-46, 94 S.E. 783, 787 (1918)).

Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Under Rule 5A:18, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. <u>See</u> <u>Mounce v. Commonwealth</u>, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987). The purpose underlying this rule is to afford the trial court an opportunity to rule intelligently on the arguments presented and to take corrective action if necessary. <u>Martin v. Commonwealth</u>, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992).

As appellant did not raise these issues during her request to strike Juror Smith for cause, she did not give the trial court the opportunity to strike the juror on the grounds she now presents. Thus, we find that appellant did not properly preserve this issue for appellate review and we therefore will not address it on appeal. <u>See</u> Rule 5A:18. Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. <u>See</u> <u>Redman v. Commonwealth</u>, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). We will not consider such an argument *sua sponte*. <u>Edwards v. Commonwealth</u>, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

"Code § 8.01-358 and Rule 3A:14 facilitate an accused's constitutional right to be tried by an impartial jury by providing that members of the venire must stand 'indifferent to the cause.'" Juniper v. Commonwealth, 271 Va. 362, 400, 626 S.E.2d 383, 408, cert. denied, 127 S. Ct. 397 (2006).

> Upon appellate review, this Court gives deference to the trial court's decision whether to retain or exclude prospective jurors. This is because the trial judge has observed and heard each member of the venire and is in a superior position to evaluate whether the juror's responses during *voir dire* develop anything that would prevent or substantially impair the juror's performance of duty as a juror in accord with the court's instructions and the juror's oath.

Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999). "[A] juror's entire *voir dire*, not isolated portions, must be considered to determine a juror's impartiality." Id. "Absent a showing of manifest error, we will affirm a trial court's decision to exclude or retain a juror." Morrisette v. Commonwealth, 264 Va. 386, 396, 569 S.E.2d 47, 54 (2002).

The trial judge heard and evaluated Juror Smith's responses during the entire *voir dire*. While Juror Smith did not indicate during the panel *voir dire* that he had been arrested, he did indicate that he had prior experience with police. When questioned alone, Juror Smith admitted to the misdemeanor drunk in public conviction and to the breaking and entering charge. The trial judge evaluated Juror Smith's credibility, and determined that he should not be dismissed for cause. In reflecting on his decision not to dismiss Juror Smith, the trial court specifically stated that Juror Smith had "relayed to the court his ability to be fair and impartial." The trial court determined that Juror Smith could perform the duties of an impartial juror "even in light of what the record reflects with regard to his criminal past."

The record does not show the trial court committed manifest error in overruling appellant's objection to striking Juror Smith for cause. Thus, we affirm the trial court's ruling.

On appeal, appellant argues only that the trial court should have "*voir dired* the jurors as to their use of their cell phones during deliberations." Appellant contends that the trial court "had a duty to inquire" into the cell phone use, and maintains that the trial court "erred by failing to grant [a]ppellant's post-trial motion."[9]

However, a review of the record reveals that, when appellant first raised the issue of cell phone use with the court during the penalty phase of the trial, appellant asked only that the trial court obtain the numbers of the cell phones, obtain the records of the calls, review those records *in camera*, and report the results of that review to appellant. Appellant never requested that the trial court *voir dire* jurors as to the content of their cell phone conversations during deliberations. Appellant's allegation that the trial court should have *voir dired* jurors came in appellant's motion to set aside the verdict, six months after the jury had been discharged. Significantly, appellant has never argued, either before the trial court or before this Court on appeal, that any juror had any discussions with an outside person relating to the trial of this case.

Because appellant did not ask the trial court to *voir dire* the jurors during the trial or allege any specific misconduct at that time by any juror in discussing the case with someone outside of the jury room, these issues were not properly and timely raised. Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Under Rule 5A:18, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will

---

[9] On appeal, appellant does not assign error to the trial court's original ruling during the penalty phase of the trial, which denied appellant's request for the trial court to collect the cell phones of the jurors and review the calls made on those phones. Because appellant does not challenge this ruling on appeal, we do not address it. See Rule 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals.").

not be considered on appeal.  See Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d

742, 744 (1987).  The purpose underlying this rule is to afford the trial court an opportunity to

rule intelligently on the arguments presented and to take corrective action if necessary.  Martin v.

Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992).

As appellant did not raise these issues during the objection she made at the penalty phase

of the trial, she did not give the trial court the opportunity, while the jury was still present, to

determine whether there was in fact jury misconduct.  Thus, we find that appellant did not

properly preserve this issue for appellate review and we therefore will not address it on appeal.

See Rule 5A:18.

At oral argument, appellant's counsel requested that this Court invoke the ends of justice

exception to consider any issue we determined was not properly preserved; however, he did not

concede that any issue was not properly preserved.  Additionally, in her brief on appeal,

appellant failed to identify any alleged error to which the "good cause" or "ends of justice"

exceptions to Rule 5A:18 apply.  Consistent with our prior holdings, we will not invoke either

exception *sua sponte*.  Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162

(2004) (*en banc*).

To invoke the exception, appellant has the burden of affirmatively showing that a

miscarriage of justice has occurred, not "that a miscarriage *might* have occurred."  Mounce, 4

Va. App. at 436, 357 S.E.2d at 744 (emphasis in original); see also Redman v. Commonwealth,

25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).  The trial error must be "clear, substantial

and material."  Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989).  This

provision is narrow and applied only when a "grave injustice or the denial of essential rights" has

occurred by way of a procedural default.  Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d

432, 433 (2005). Appellant has failed to meet this burden; therefore, we decline to apply the ends of justice exception.

CONCLUSION

We find that the trial court did not err in denying appellant's motion to suppress her statements, as she was not in custody when she was questioned by the police in the hospitals. Appellant was not entitled to be given warnings under <u>Miranda</u> 384 U.S. 436, for the first two interviews; thus, she cannot argue that the waiver of her <u>Miranda</u> rights before the third interview at the sheriff's office was improperly tainted by her first two statements. We hold that the trial court did not err in refusing to strike Juror Smith for cause. Finally, we find that appellant's argument that the trial court erred in failing to conduct *voir dire* in relation to alleged jury misconduct is defaulted on appeal under Rule 5A:18. Thus, we affirm appellant's convictions for second-degree murder, robbery, and two counts of using a firearm in the commission of those offenses.

<u>Affirmed.</u>