UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia

TRAVIS DEON STANLEY

                                                MEMORANDUM OPINION* BY
v.        Record No. 0652-13-3                  JUDGE ROSEMARIE ANNUNZIATA
                                                DECEMBER 16, 2014

COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                              G. Carter Greer, Judge

            Caitlin Reynolds-Vivanco, Assistant Public Defender, for appellant.

            Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
            Herring, Attorney General, on brief), for appellee.


        Travis Deon Stanley, appellant, appeals his convictions for grand larceny from the person,

malicious wounding, abduction, and conspiracy to commit robbery.  On appeal, he argues the trial

court erred "by denying [his] motion to question an empanelled juror about her relationship with the

alleged victim in the case after the juror notified a bailiff that she knew the alleged victim" and by

denying the motion for a mistrial based on the same grounds.  Finding no error, we affirm the

decision of the trial court.

                                    I.  BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At the beginning of the jury trial on the offenses charged, the trial court explained the jury selection process to the venire, stating that the procedure is designed to determine whether there is any reason why any potential juror should not serve on the jury. The trial court "ask[ed] that [the venire] pay attention as the clerk read[] the list of witnesses who [were] expected to testify." The trial transcript states, "CLERK READS LIST OF WITNESSES." At oral argument, appellant's counsel acknowledged that Saunders' name was on the witness list. The record does not indicate that any potential jurors reacted to this list. The trial court did not ask if any of the venire knew or recognized the names of any of the witnesses.

The trial court then asked a series of questions to the entire venire with this explanation: "If you do not raise your hand [to indicate a question applies to you], then the court will assume that the question does not apply to you." Among other inquiries, the trial court asked:

- "Do any of you know or are any of you related by blood or marriage to the defendant, Mr. Stanley?

- "Are any of you friends, clients, or former clients of either of the [d]efense attorneys . . . or former clients of any staff member of the Commonwealth's Attorney's Office . . . ?"

- "Have you expressed or formed any opinion as to the guilt or innocence of the defendant?"

- "Are you aware of any bias or prejudice that you may have for or against the Commonwealth or the accused?"

- "Do you understand that the defendant is presumed to be innocent?"

- "Do you understand that the Commonwealth must prove the defendant's guilt beyond a reasonable doubt?"

- "[D]o you know of any reason whatsoever why you cannot give a fair and impartial trial to both the Commonwealth and the defendant based solely on the law and evidence?"

No affirmative responses were given.

The trial court also allowed the prosecutor and defense counsel to question the venire. Neither party specifically asked if any potential juror knew or had any relationship with any of the witnesses who were to testify in the case. However, defense counsel asked several questions designed to elicit any bias for or against a victim of a criminal offense or for or against a defendant, viz.,:

- "Has anyone here been a victim of a violent crime or have you known anyone, someone close to you that was a victim of a violent crime?"

- "Would anyone in here believe a victim based on their testimony just because they were a victim?"

- "Would anyone in here just not believe the defendant at all based off the victim's testimony or just because he's the defendant today?"

No affirmative responses were elicited from this series of questions.

The parties exercised their peremptory strikes, and the jurors for the trial were empaneled and sworn. Shortly thereafter and before opening statements, the court recessed and brought counsel for the parties to the court's conference room where the trial court reported an issue involving a juror that had been brought to his attention. The trial court stated, "[J]ust moments ago the bailiff brought it to the court's attention that as the jury was being excused, one of the jurors mentioned that she knows a witness, and I am told that that is a material witness for the Commonwealth." During the colloquy that followed, it became known that the material witness at issue was the victim, Marcquise Saunders. The Commonwealth's Attorney stated she would object to releasing the jury because "there is nothing to say that [the juror] is bias[ed] for or against." Defense counsel requested the opportunity to question the juror further, explaining

> the court had asked her whether there was any reason why she could not be impartial and she said, "No" at the time. Then we come later to find out that she knows one of the material witnesses for the Commonwealth's case so we're asking that she be questioned further about the bias.

The Commonwealth's Attorney raised no objection to the defense request. However, in response to defense counsel's request, the trial court noted that the jury had been sworn and appellant was in jeopardy. Continuing, the trial court noted it did "not recall any question being asked that would have required [the juror] in good faith to respond that she knew this particular witness." The trial court also pointed out that it had not asked if any of the potential jurors "knew any of the witnesses" and, although it asked the jury "to pay attention to the list of witnesses that w[as] read by the clerk," it "typically leaves it up to the attorneys to follow up on that if there are any questions." The trial court denied the defense motion stating, "Since there was no question in which [in] the court's view would have required [the juror] to respond that she knew or knows Mr. Saunders, then the court doesn't see any basis to call her back at this point." Appellant's counsel noted his objection for the record and moved for a mistrial, proffering no new grounds. The trial court denied the motion "[f]or the same reasons," finding no manifest necessity to declare a mistrial.

Two months later, at the sentencing hearing, appellant's counsel requested a continuance in order to research the issue "concerning a juror, who after the jury panel was sworn, . . . then realized that she knew the victim in the case." Counsel stated he needed the opportunity to have an investigator speak with the juror and "determine whether the fact that she knew that victim didn't bias her decision during the trial." The Commonwealth opposed a continuance, stating appellant had the opportunity to explore the matter previously. The prosecutor also stated that, based on a conversation with the bailiff who was working at the trial, she understood the juror "merely recognized one of the witnesses."

The trial court recalled that "the precise statement made by the juror was something to the effect that she recognized a victim or the victim" and it pointed out that no question was asked during *voir dire* as to whether any of the prospective jurors recognized the victim. The

trial court recalled it had denied appellant's motion for a mistrial on the basis that "the jury had been fairly impaneled and that we had a fair and impartial panel." The trial court denied the motion for continuance, ruling that the testimony of the juror would not be admissible in order to impeach the verdict.

Appellant appeals to this Court the trial court's denial of his motion to examine the juror and the denial of his motion for a mistrial.

## II. STANDARDS OF REVIEW

When a challenge to a juror's impartiality arises midtrial, we "'will reverse the trial court's decision only for an abuse of discretion,' applying the 'same standard' of review appropriate to appellate consideration of a decision to seat a venireperson." Nelson v. Commonwealth, 41 Va. App. 716, 731, 589 S.E.2d 23, 30-31 (2003) (quoting Green v. Commonwealth, 26 Va. App. 394, 401, 494 S.E.2d 888, 891 (1998)), aff'd, 268 Va. 665, 604 S.E.2d 76 (2004).

> A party has no right, statutory or otherwise, to propound any question he wishes, or to extend *voir dire* questioning *ad infinitum*. The court must afford a party a full and fair opportunity to ascertain whether prospective jurors "stand indifferent in the cause," but the trial judge retains the discretion to determine when the parties have had sufficient opportunity to do so.

LeVasseur v. Commonwealth, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983).

Similarly, a ruling on a motion for a mistrial will stand unless the trial court abuses its discretion. See Haddad v. Commonwealth, 229 Va. 325, 330, 329 S.E.2d 17, 20 (1985) (recognizing that the trial court is bound by "the exercise of a sound discretion").

> A court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

Turner v. Commonwealth, 284 Va. 198, 206, 726 S.E.2d 325, 329 (2012) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).

"In evaluating whether a trial court abused its discretion . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997)).

## III. DENIAL OF MOTION TO QUESTION EMPANELED JUROR

"[A]n accused is entitled to an impartial jury as a matter of constitutional guarantee, reinforced by legislative mandate and by the Rules of . . . court." Martin v. Commonwealth, 221 Va. 436, 444, 271 S.E.2d 123, 128 (1980). "It is the court's duty to procure an impartial jury." Scott v. Commonwealth, 1 Va. App. 447, 451, 339 S.E.2d 899, 901 (1986), aff'd, 233 Va. 5, 353 S.E.2d. 460 (1987). Although a defendant has a constitutional right to trial by an impartial jury, Educational Books, Inc. v. Commonwealth, 3 Va. App. 384, 386, 349 S.E.2d 903, 906 (1986), the right does not require a hearing into any allegation of potential bias or misconduct by a juror in every circumstance where an allegation of bias is made, see Nelson, 41 Va. App. at 733, 589 S.E.2d at 31. Rather, in such situations, "the trial court should consider the totality of the circumstances and determine whether a party presented credible allegations of bias that undermine the prior determination of impartiality reached by the court at the conclusion of the *voir dire* process." Id. "In effectuating [the guarantee to an impartial jury], . . . there are no hard and fast rules and each case must be determined on its own set of facts." Educational Books, 3 Va. App. at 387, 349 S.E.2d at 906. Cf. Haddad, 229 Va. at 330, 329 S.E.2d at 20 (trial court must determine, using sound discretion, whether juror's remarks demonstrate prejudice might result); Patterson v. Commonwealth, 39 Va. App. 658, 669, 576 S.E.2d 222, 228 (2003)

(impartiality must be evaluated based on entire *voir dire*); David v. Commonwealth, 26 Va. App. 77, 81, 493 S.E.2d 379, 381 (1997) (juror impartiality is a question of fact).[1]

Here, it is contended that the trial court erred when it denied appellant's motion to question an empaneled juror about her relationship with the alleged victim in the case after the juror notified a bailiff that she knew or recognized the alleged victim. A careful reading of the trial transcript fails to show the juror notified the bailiff that "she knew the alleged victim," but rather that she knew or recognized a "witness" in the case.[2]

A similar issue was addressed by this Court's decision in Nelson. In that case, the prosecutor advised the trial court on the second day of trial that the foster mother of the victim had informed him that she knew one of the jurors from the workplace where she was employed some eighteen months earlier. Nelson, 41 Va. App. at 729, 589 S.E.2d at 29. The juror and the victim's foster mother had "'made eye contact and smiled'" during *voir dire*. Id. The juror had never met the victim and, during *voir dire*, the juror indicated she did not know any of the

---

[1] See United States v. Rigsby, 45 F.3d 120, 124-25 (6th Cir. 1995) ("When there is a *credible* allegation of extraneous influences, the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated." (emphasis added))); see also United States v. Morales, 655 F.3d 608, 630 (7th Cir. 2011) (affirming denial of a hearing to investigate juror misconduct when "any potential bias is a matter of sheer speculation"); United States v. Davis, 15 F.3d 1393, 1412 (7th Cir. 1994) ("A court is under no obligation to inquire into the possibility of improper influence until the defendant comes forward with a colorable allegation of taint."); United States v. Easter, 981 F.2d 1549, 1553 (10th Cir. 1992) (evidentiary hearing not warranted "when only 'thin allegations of jury misconduct' are present"); United States v. Barshov, 733 F.2d 842, 851 (11th Cir. 1984) ("The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality."); United States v. Sedigh, 658 F.2d 1010, 1014 (5th Cir. 1981) (where allegations of juror misconduct "remain speculative the trial court need not inquire further"); State v. Harris, 551 S.E.2d 499, 503 (N.C. Ct. App. 2001) ("there is no absolute rule that a court must hold a hearing to investigate juror misconduct upon an allegation").

[2] During the discussion of the issue between the trial court and counsel, it was revealed that the juror was referring to Saunders. However, nothing in the record indicates that at the time the issue arose, the juror told the bailiff she knew that Saunders was the victim in the case.

witnesses and she could evaluate the evidence fairly.  Id.  Neither counsel asked the venire if anyone knew the victim's foster parents, and the foster mother did not testify in the case.  Id.

The trial court denied the defendant's mid-trial motion to question the juror about her possible familiarity with anyone seated in the courtroom.  Id. at 729-30, 589 S.E.2d at 29-30. The trial court reasoned the juror had answered all questions asked in *voir dire* and nothing indicated "'any kind of prejudice here to anybody.'"  Id. at 729-30, 589 S.E.2d at 30.  The trial court further noted that counsel "'had an opportunity to ask them every question you possibly could, and you chose not to ask them whether or not they had any relation and I don't see that it has anything to do with the case.'"  Id. at 730, 589 S.E.2d at 30.

On appeal, this Court found the trial court "did not err in refusing to investigate the allegation of potential bias," id. at 733, 589 S.E.2d at 31, pointing out that the information from the juror "did not credibly allege any favoritism toward the victim or bias against appellant," id. at 734, 589 S.E.2d at 32.  Underscoring that appellant was given the opportunity to ask relevant questions to elicit bias or prejudice on the part of prospective jurors, we stated, "'it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.'"  Id. at 733-34, 589 S.E.2d at 32 (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 555 (1984)).

In an analogous federal case, United States v. Rigsby, 45 F.3d 120 (6th Cir. 1995), during *voir dire*, neither counsel inquired as to whether any of the jurors knew any of the witnesses.  Id. at 121.  Immediately after the opening statements were concluded, a juror told a marshal that "she thought she might know some of the witnesses."  Id. at 122.  The marshal informed the trial judge of the matter, and defense counsel suggested that it might be appropriate to inquire into the connection.  The trial court declined to question the juror.  On appeal, the court held the trial

court had not abused its discretion in its ruling, stating "[w]hen the trial court places no limitation upon counsel's voir dire questions, and counsel fails to inquire concerning possible relationships of jurors, we do not believe a tentative statement such as that made by the juror in this case [that the juror thought she might know some of the witnesses] requires any inquiry by the court." Id. at 125. See also United States v. Bradshaw, 787 F.2d 1385 (10th Cir. 1986) (in absence of showing of actual bias, and where defense counsel did not question jury about relationships with witnesses and did not provide specific information of bias, court declined to find implied bias and conduct further inquiry after mid-trial disclosure that juror was acquainted with witnesses); cf. United States v. Caldwell, 776 F.2d 989, 998 (11th Cir. 1985) ("The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate.").

Here, the fact that the juror knew or recognized a witness "without more, should not lead us to impute a bias to [her] which is not disclosed by the record." See Scott, 1 Va. App. at 452, 339 S.E.2d at 902 (holding juror's employment at a grocery chain where one of its stores was the scene of a crime, "without more," should not lead Court to ascribe bias where there was no evidence of it in the record). In itself, such knowledge does not "credibly allege any favoritism toward the victim or bias against appellant." See Nelson, 41 Va. App. at 734, 589 S.E.2d at 32. Moreover, "[t]here is no *per se* disqualification rule for a prospective juror related to a prosecution witness, Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 732 (2001), [or] a current or past acquaintance between a juror and a prosecution witness, Perez v. Commonwealth, 40 Va. App. 648, 656, 580 S.E.2d 507, 511 (2003) . . . ." Bay v. Commonwealth, 60 Va. App. 520, 531, 729 S.E.2d 768, 773 (2012).

Thus, in itself, a juror's knowledge or recognition of a witness does not present a "credible allegation[] of bias that undermine[s] the prior determination of impartiality reached by the court at the conclusion of the *voir dire* process" and does not warrant granting appellant's

request for a mid-trial examination of the juror for bias or prejudice.  See Nelson, 41 Va. App. at 733, 589 S.E.2d at 31.

Giving further consideration to the issue by reviewing the totality of the circumstances surrounding the entire *voir dire*, see id., we cannot say the trial court abused its discretion in denying appellant's mid-trial motion for further examination of the juror.  The witness list was read to the venire, and the venire's attention was called to the list by the court.  The venire was told the individuals on the list were expected to testify and was asked by the court whether any prospective juror was "aware of any bias or prejudice that you may have for or against the Commonwealth or the accused."  The venire was also asked "[D]o you know of any reason whatsoever why you cannot give a fair and impartial trial to both the Commonwealth and the defendant based solely on the law and evidence?"  No prospective juror reacted to the list of witnesses when it was presented.  No prospective juror responded in the affirmative to the court's inquiries about potential bias against either party.  No prospective juror indicated an inability to give a fair and impartial trial to both the Commonwealth and the defendant based solely on the law and evidence.

> A defendant is "entitled to a fair trial, but not a perfect one."  Lutwak v. United States, 344 U.S. 604, 619 (1953).  See also Smith v. Phillips, 455 U.S. 209, 217 (1982) (noting *voir dire* is not "infallible" as "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote").  "One touchstone of a fair trial is an impartial trier of fact -- 'a jury capable and willing to decide the case solely on the evidence before it.'"  McDonough[, 464 U.S. at 554] (quoting Smith v. Phillips, 455 U.S. 209, 217 1982)).

Id. at 731, 589 S.E.2d at 30.

Appellant's reliance on Educational Books does not change the analysis or the result.  Indeed, the decision in Educational Books can be distinguished on its facts, is consistent with the principles set forth in Nelson and, effectively, supports the conclusions reached here.

- 10 -

In Educational Books, after the Commonwealth made its opening statement, a juror remarked, "'I wanted to tell you something that I didn't realize. I know where this establishment is and have a great prejudice against it. They didn't mention where it was or--I'm well aware of where it is.'" Educational Books, 3 Va. App. at 386, 349 S.E.2d at 906. This Court found that where the juror disrupted proceedings after the Commonwealth's opening statements and admitted her "great prejudice" and "preconceived ideas," id. at 387-88, 349 S.E.2d at 906, it was an abuse of discretion for the trial court "not to dismiss the challenged juror or not to make a more probing substantive inquiry once her prejudice against the appellant was unequivocally stated," id. at 390, 349 S.E.2d at 908.

In contrast, the juror's comment to the bailiff in the present case was not an unequivocal statement of prejudice and did not necessitate a hearing into appellant's allegation of potential bias. See Nelson, 41 Va. App. at 732, 589 S.E.2d at 31. Specifically, the juror's statement to the bailiff--that she knew or recognized a witness in the case--did not imply favoritism toward the witness or bias against appellant.

Therefore, we cannot say that the trial court abused its discretion in denying appellant's mid-trial motion to examine the empaneled juror because the juror indicated she knew or recognized a witness in the case.

IV. DENIAL OF MOTION FOR MISTRIAL

Immediately after the trial court denied appellant's mid-trial request to question the juror, appellant made a motion for a mistrial, advancing no additional argument. The trial court ruled, "For the same reasons, the court sees no manifest necessity to declare a mistrial and that motion is also denied."

> "When the issue [of impermissible juror bias] arises from a 'midtrial' challenge to a juror's impartiality, we 'will reverse the trial court's decision only for an abuse of discretion,' applying the 'same standard' of review appropriate to appellate consideration of

- 11 -

> a decision to seat a venireperson.  Hunt v. Commonwealth, 25
> Va. App. 395, 399, 488 S.E.2d 672, 674 (1997); see David[, 26
> Va. App. at 80, 493 S.E.2d at 381] (juror impartiality [is] a factual
> determination, disturbed on appeal only for 'manifest error').
> Hence, we will not overturn 'the denial of a motion for a mistrial
> . . . unless there exists a manifest probability that [the ruling] was
> prejudicial.'  Taylor [v. Commonwealth], 25 Va. App. [12,] 17,
> 486 S.E.2d [108,] 110 [(1997)]."

Nelson, 41 Va. App. at 731, 589 S.E.2d at 30-31 (quoting Green, 26 Va. App. at 401, 494 S.E.2d at 891).

Appellant relies on the holding in Haddad to support his argument that the trial court abused its discretion by failing to grant his motion for a mistrial.

In Haddad, at a lunch break during the trial, a juror said to defense counsel, "'[D]oesn't that make you feel guilty when you get somebody off on a criminal charge and then you know he is allowed to walk the streets?'"  Haddad, 229 Va. at 327, 329 S.E.2d at 18.  Defense counsel also stated the juror said, "'[W]ell, my client is not going to get off . . . .'"  Id.  The trial court questioned the juror about the remarks and found the juror was "'going to be fair and impartial.'"  The trial court denied the defendant's motion for a mistrial.

The Supreme Court stated:

> [A] mistrial will not be declared automatically upon a showing of
> juror misconduct, but . . . the trial judge, in the exercise of a sound
> discretion, must determine whether remarks made about the case
> by a juror to persons not jurors demonstrate that prejudice might
> result.  The burden to establish this probability of prejudice is upon
> the party moving for a mistrial.

Id. at 330, 329 S.E.2d at 20.

In Haddad, the Supreme Court found the juror "probably was impartial no longer."  Id. at 331, 329 S.E.2d at 20.  It concluded "the evidence offered in support of the motion for the mistrial was sufficient to establish a probability of prejudice to the accused and . . . the trial court abused its discretion in denying the motion [for a mistrial]."  Id. at 330-31, 329 S.E.2d at 20.

- 12 -

Here, however, appellant did not "demonstrate that prejudice might result" from the juror's observation that she knew or recognized a witness. Her comment "did not facially demonstrate bias or partiality" to either party. See Green, 26 Va. App. at 402, 494 S.E.2d at 891-92. Neither did she opine that appellant was guilty or would be convicted. In short, the juror's knowledge or recognition of the witness does not indicate she no longer remained impartial as established by her answers to the inquiries made during *voir dire*.

Finally, it must be noted that there is no evidence of juror misconduct in this case. The juror did not provide an untruthful response on *voir dire*, or provide any basis upon which to premise a probability of prejudice. Accordingly, we find the trial court did not abuse its discretion in denying the motion for a mistrial; nothing in the record shows that its prior determination of impartiality reached at the conclusion of the *voir dire* process was undermined. See Nelson, 41 Va. App. at 733, 589 S.E.2d at 31.

For these reasons, we affirm appellant's convictions.

Affirmed.